**UNITED STATES of America**

v.

**Stephen E. TAYMAN, Defendant.**

**Civ. A. No. 94–1575–AM.**
**Cr. A. No. 92–112–A.**

United States District Court,
E.D. Virginia.

May 1, 1995.

Helen F. Fahey, U.S. Atty., Kevin C. Quin, Special Asst. U.S. Atty., Alexandria, VA, for U.S.

Robert H. Ellis, Stephen L. Lauer, Lauer & Lauer, P.C., Fairfax, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Stephen E. Tayman received a mandatory minimum sentence of five years under 21 U.S.C. § 841 for having conspired to distribute one hundred or more kilograms of marijuana, which sentence he now attacks by a motion pursuant to 28 U.S.C. § 2255. After Tayman's conviction and sentence became final, it was decided in *United States v. Irvin,* 2 F.3d 72 (4th Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994), that mandatory minimum sentences imposed under § 841 must be based on the amount of drugs that was reasonably fore-

seeable to the defendant, rather than on the entire amount distributed by the conspiracy. Tayman alleges that, had a reasonable foreseeability determination been made at his sentencing as required by *Irvin,* far less than one hundred kilograms of marijuana would have been attributed to him. If this allegation is true, Tayman is entitled to relief under § 2255 because (i) *Irvin* announced a rule of substantive criminal law that applies retroactively to cases on collateral review, (ii) the fundamental error in sentencing alleged by Tayman presents exceptional circumstances warranting collateral relief, and (iii) Tayman has shown "cause and prejudice" excusing his failure to object earlier to the drug quantity attributed to him at sentencing. As a result, a hearing is necessary to determine whether Tayman was held accountable for drug quantities that were not reasonably foreseeable to him. If so, Tayman's § 2255 motion must be granted, his sentence must be vacated, and a new sentence imposed.

### I.

In late 1989, Emery Wisenbaker and several other individuals began a conspiracy to transport marijuana from Houston and other locations to northern Virginia for distribution. Tayman rented a room to Wisenbaker, and because Wisenbaker did not have a driver's license, Tayman drove him on errands in exchange for meals and marijuana. Wisenbaker eventually recruited Tayman as a distributor of marijuana. During the three to four months he was involved in the conspiracy, Tayman received one pound of marijuana from Wisenbaker approximately every ten days, which amount he then distributed. Tayman also participated in the conspiracy by wiring money for Wisenbaker to a drug source in Houston, and by purchasing an airline ticket for Wisenbaker to travel to Texas in connection with the conspiracy's activities.

On February 25, 1992, Tayman was arrested at his house. Police executed a search warrant for the house and found drug trafficking paraphernalia and marijuana packaged for distribution. On March 19, Tayman pled guilty to a one-count criminal informa-

tion charging him with conspiracy to possess and distribute one hundred kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 846. Neither the criminal information nor the plea agreement and accompanying statement of facts specified the quantity of drugs attributable to the conspiracy that was reasonably foreseeable to Tayman.

Tayman was sentenced on May 22, 1992. Prior to the sentencing hearing, the probation officer prepared a Pre–Sentence Investigation Report, which Tayman and his counsel reviewed. The report recommended that Tayman receive a base offense level of 26, the level appropriate for an offense involving one hundred to four hundred kilograms of marijuana. See United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1. The report recommended the one hundred kilogram figure because Tayman "pled guilty to Conspiracy to Distribute 100 Kilograms or More of Marijuana." Tayman's counsel submitted a number of proposed corrections and additions to the report, and requested a downward adjustment for "mitigating role" pursuant to U.S.S.G. § 3B1.2. At the hearing, defense counsel withdrew the proposed changes and the objection, except that he requested the report reflect that Tayman personally distributed only ten to twelve pounds of marijuana. The Assistant United States Attorney at the sentencing had no objection to the addition of this fact to the report. The Court accepted the change, noting that the addition "doesn't change the guidelines because [Tayman] is chargeable in the conspiracy with what he reasonably should have known, which is the full amount of the conspiracy." Tayman's counsel immediately expressed his agreement with the Court's understanding. Ultimately, Tay-

man's base offense level was fixed at 26, his total offense level at 24,[1] and his criminal history score at category I, resulting in a sentencing range of 51 to 63 months. See U.S.S.G. § 5A. A statutory mandatory minimum sentence of five years trumped the guidelines range in the absence of a downward departure. See 21 U.S.C. § 841(b)(1)(B)(vii). Neither party having moved for a downward departure, the Court sentenced Tayman to sixty months imprisonment, four years supervised release, one hundred hours of community service, and a $50 special assessment.

Tayman did not appeal his conviction or sentence. Although he provided some assistance to the government, the government did not file a motion to reduce his sentence pursuant to Rule 35, Fed.R.Crim.P., in part because it was discovered that he had failed to disclose his involvement in several additional marijuana transactions.[2]

Tayman now collaterally attacks his sentence pursuant to 28 U.S.C. § 2255. He alleges that no more than thirty pounds (approximately 18.75 kilograms) of marijuana were reasonably foreseeable to him. If true, Tayman's proper sentencing range would have been 15 to 21 months, far less than the five-year sentence he in fact received.[3] In other words, Tayman claims that, had a proper sentence been imposed, he would have left prison well over a year ago.

## II.

 As a threshold matter, it is necessary to address the government's contention that Tayman has waived the right to seek relief under § 2255. In his plea agreement, Tayman waived his right to appeal his sentence.[4]

1. Tayman received a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

2. Tayman's counsel asserts that these transactions involved less than ten pounds of marijuana. In any event, they were neither relevant nor considered in fixing Tayman's sentence.

3. This range is based on a base offense level of 16, appropriate for an offense involving 10 to 20 kilograms of marijuana, a two level reduction for acceptance of responsibility, and a criminal history in category I. See U.S.S.G. §§ 2D1.1, 5A.

4. Tayman's plea agreement provides, in pertinent part, that

In addition, the defendant, knowing that he has a right of direct appeal of the sentence under 18 U.S.C. § 3742(a) and the grounds listed herein [sic], expressly waives the right to appeal his sentence on those grounds or on any grounds.... Realizing the uncertainty in estimating what sentence he will ultimately receive, defendant knowingly waives his right to appeal the sentence in exchange for the concessions made by the government in this agreement.

Yet, the plea agreement contained no reference to § 2255 or other collateral remedies. The government agrees that the appeal waiver "technically" does not apply here, but argues that the provision should be construed beyond its literal terms to bar Tayman from obtaining § 2255 relief. In the government's view, allowing Tayman to obtain review of his sentence under § 2255 would subvert the plea agreement's spirit.

■ A plea agreement is a contract. Plain and unambiguous terms must be enforced as they are written. Neither the government nor the defendant "should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986). Because plea agreements affect defendants' constitutional rights and the public's confidence in the criminal justice system, the government has a special "responsibility for insuring precision in the agreement." *Id.* at 301. It is not difficult for the government to write plea agreements that explicitly waive both appeal and § 2255 rights.[5] Where the government does not do so, courts must conclude that the defendant has not waived his right to bring a § 2255 motion. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir.1994); *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992); *cf. United States v. Clenney*, 25 F.3d 1041, 1994 WL 233296 (4th Cir.1994) (unpublished) (suggesting in dictum that waiver of right to appeal does not waive rights under § 2255).[6] Under plea agreements, "[t]he

government gets what it bargains for but nothing more." *Pruitt*, 32 F.3d at 433. Tayman's plea agreement literally and plainly provides only that he waived his right to appeal. It therefore does not preclude this motion under § 2255.

### III.

In this § 2255 motion, Tayman attacks the mandatory minimum sentence that was imposed on him pursuant to 21 U.S.C. § 841(b)(1). He received a five-year sentence, appropriate for an offense involving one hundred kilograms or more of marijuana. He argues that the Court imposed the five-year mandatory minimum sentence without considering whether the one hundred kilogram amount was reasonably foreseeable to him. Although the conspiracy as a whole involved well over one hundred kilograms, Tayman contends that he neither personally distributed that amount, nor could have reasonably foreseen the distribution of such an amount. Instead, he claims that less than twenty kilograms of marijuana was reasonably foreseeable to him.

Simply put, Tayman seeks to take advantage of the holding in *United States v. Irvin*, 2 F.3d 72 (4th Cir.1993), a decision rendered after his conviction and sentence became final.[7] In *Irvin*, a unanimous panel of the Fourth Circuit held that a district court must determine the quantity of narcotics reasonably foreseeable to the defendant before applying the mandatory minimum sentence provisions of 21 U.S.C. § 841. In other

Such a waiver is enforceable only if the district court specifically questioned the defendant about it during the Rule 11 colloquy or the record otherwise indicates that the defendant fully understood its significance. *See United States v. Marin*, 961 F.2d 493 (4th Cir.1992). While the record reflects that Tayman was questioned about the waiver during the plea colloquy, it is unnecessary to determine whether this requirement was satisfied here, because the plea agreement did not waive Tayman's § 2255 rights.

5. There is no short supply of published decisions describing such plea agreements. *See, e.g., United States v. Attar*, 38 F.3d 727, 729 (4th Cir. 1994); *United States v. Hoyle*, 33 F.3d 415, 417 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 949, 130 L.Ed.2d 892 (1995); *United States v. Craig*, 985 F.2d 175, 177 (4th Cir.1993); *United States v. Bowden*, 975 F.2d 1080, 1081, n. 1

(4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1351, 122 L.Ed.2d 732 (1993).

6. *But see United States v. Abarca*, 985 F.2d 1012 (9th Cir.) (defendant who waives right to appeal may bring § 2255 claims only for ineffective assistance of counsel or involuntariness of the waiver), *cert. denied,* —— U.S. ——, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993); *United States v. Kuhl*, 816 F.Supp. 623, 631–32 (S.D.Cal.1993).

7. Tayman's conviction and sentence became final ten days after his May 22, 1992 sentencing, when the time in which to note an appeal expired. Rule 4(b), Fed.R.App.P.; *See Allen v. Hardy*, 478 U.S. 255, 258 n. 1, 106 S.Ct. 2878, 2880 n. 1, 92 L.Ed.2d 199 (1986). *Irvin* was not decided until August 23, 1993.

words, mandatory minimum sentences under § 841 must be based on the amount of drugs that was reasonably foreseeable to the individual co-conspirator being sentenced, rather than on the entire amount of drugs attributable to the conspiracy as a whole.[8] The central question here is one of retroactivity: May a defendant rely on *Irvin* in collaterally attacking his sentence where, as here, his conviction became final before *Irvin* was decided?

■ The long and well-established traditional principle is that judicial decisions, unlike legislative enactments, generally apply retroactively as well as prospectively. This approach is "overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991) (plurality opinion) (citations omitted).[9] For a time, bowing to recognition of "the sometimes inequitable and disruptive effects of law-changing decisions,"[10] the Supreme Court departed from the traditional rule of full retroactivity and applied a "balancing" test to determine whether to apply its decisions retroactively or only prospectively.[11] More recently, the Supreme Court has returned to the tradition-

al requirement that all rules of federal law, whether criminal or civil, "must be given full retroactive effect in all cases still open on direct review." *Harper v. Virginia Dep't of Taxation*, —— U.S. ——, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (civil); *Griffith v. Kentucky*, 479 U.S. 314, 320–28, 107 S.Ct. 708, 711–16, 93 L.Ed.2d 649 (1987) (criminal).

In other words, had Tayman's case been pending on direct appeal when *Irvin* was decided, *Irvin* would apply retroactively to it. The issue is more complicated because Tayman's conviction and sentence were already final when *Irvin* was decided. The Supreme Court does not require that decisions apply retroactively to cases presented, as here, on collateral review. Although the parties agree that *Harper* and *Griffith* do not control here, they disagree about what standard determines whether *Irvin* applies retroactively to Tayman's case.

### A.

The government argues that *Irvin*'s retroactivity is governed by the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and suc-

8. Tayman points out that in a recent case in another division of this district, a § 2255 motion was granted on the ground that the mandatory minimum sentence imposed was invalid in light of *Irvin*. *See Proctor v. United States*, Crim. No. 92–72–N–06 (E.D.Va. Nov. 7, 1994) (memorandum opinion and order). The issue of retroactivity was not raised by either party or the court in that case. Accordingly, the issue may have been waived. *See Schiro v. Farley*, —— U.S. ——, ——, 114 S.Ct. 783, 788, 127 L.Ed.2d 47 (1994) (nonretroactivity argument is not jurisdictional and may be waived by government's failure to raise it); *Williams v. Dixon*, 961 F.2d 448, 456–58 (4th Cir.) (same), *cert. denied*, —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992). Although *Proctor* does not control the proper disposition of the case at bar, it is worth noting that the conclusion reached here is consistent with it.

9. For helpful background and collection of cases, see Liebman, *More than "Slightly Retro": The Rehnquist Court's Rout of Habeas Corpus Jurisdiction in Teague v. Lane*, 18 *N.Y.U.Rev.L. & Soc.Change* 537 (1990/1991). *See also* Blume & Pratt, *Understanding Teague v. Lane*, 18 *N.Y.U.Rev.L. & Soc.Change* 325 (1990/1991); Dubber, *Prudence and Substance: How the Su-*

*preme Court's New Habeas Retroactivity Doctrine Mirrors and Affects Substantive Constitutional Law*, 30 *Am.Crim.L.Rev.* 1 (1992); McGreal, *Back to the Future: The Supreme Court's Retroactivity Jurisprudence*, 15 *Harv.J.L. & Pub.Pol'y* 595 (1992).

10. *American Trucking Ass'ns v. Smith*, 496 U.S. 167, 200, 110 S.Ct. 2323, 2343, 110 L.Ed.2d 148 (1990) (plurality opinion).

11. The Court determined first whether the decision announced a "new rule," and if so, applied a balancing test that looked to (i) the history, purpose, and effect of the new rule, and whether retroactive operation would further or retard its operation; and (ii) the extent of reliance on the old rule, and whether retroactive application would be substantially inequitable or disruptive of the administration of justice. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (test for civil cases); *Linkletter v. Walker*, 381 U.S. 618, 622–23, 85 S.Ct. 1731, 1734, 14 L.Ed.2d 601 (1965) (test for criminal cases).

ceeding cases.[12] In these cases, the Supreme Court addressed the question whether "new constitutional rules of criminal procedure" apply retroactively to cases on collateral review. *Teague,* 489 U.S. at 299, 310, 316, 109 S.Ct. at 1069, 1075, 1078. The *Linkletter* balancing approach used prior to *Teague* proved too "unprincipled and inequitable" because it resolved retroactivity issues in a manner more legislative than judicial, in that the question turned on policy considerations rather than on principle. *Id.* at 304, 109 S.Ct. at 1072.[13] Beginning in *Teague,* the Supreme Court discarded the balancing test in favor of an approach to retroactivity and collateral review that was born in several opinions written two decades earlier by Justice Harlan.[14] Specifically, Harlan advocated a less elastic approach, under which new rules generally do *not* apply retroactively to cases on collateral review. *See Teague,* 489 U.S. at 305–10, 109 S.Ct. at 1072–75.[15] According to the government, the *Teague* line of cases applies here, with the result that Tayman cannot prevail because his collateral attack rests on *Irvin,* a new rule.

The Supreme Court has stated more than once that *Teague*'s analysis applies to "new constitutional rules of criminal procedure." [16]

Yet, the Supreme Court has never made clear that it applies *only* to such rules. Tayman contends that *Teague* does not apply here because *Irvin*'s rule is neither constitutional nor procedural. Moreover, the Supreme Court has only had occasion to apply *Teague*'s analysis in cases in which state prisoners sought habeas relief pursuant to 28 U.S.C. § 2254. Tayman, of course, is a federal prisoner whose claims arise under § 2255. Thus, there are several potential grounds on which to distinguish *Teague* from the case and bar, and it is therefore necessary to consider (1) whether *Teague*'s analysis applies to § 2255 claims, (2) whether *Teague* applies to new decisions interpreting statutes or the common law rather than the Constitution, and (3) whether *Teague* applies to new rules of substantive criminal law as opposed to criminal procedure.

1.

■ In developing the analysis later adopted by the Supreme Court in *Teague,* Justice Harlan drew no distinction between § 2255 motions and other forms of collateral review such as *habeas* petitions under § 2254.[17] Although the Supreme Court has never addressed the issue,[18] several courts have held that *Teague* applies to § 2255

---

**12.** Although *Teague* was a plurality opinion, its analysis has subsequently been adopted in full by a clear majority of the entire Supreme Court. *See Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).

**13.** *See also Mackey v. United States,* 401 U.S. 667, 676, 91 S.Ct. 1160, 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) (the series of precedents created under the balancing approach "became almost as difficult to follow as the tracks made by a beast of prey in search of its intended victim"); Fallon & Meltzer, *New Law, Non–Retroactivity, and Constitutional Remedies,* 104 *Harv.L.Rev.* 1731, 1797–1807 (1991).

**14.** *See Teague,* 489 U.S. at 292, 109 S.Ct. at 1065 ("[W]e adopt Justice Harlan's approach to retroactivity for cases on collateral review.") (citing *Mackey,* 401 U.S. at 675, 91 S.Ct. at 1164–65, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part), and *Desist v. United States,* 394 U.S. 244, 256, 89 S.Ct. 1030, 1037, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)).

**15.** *Teague* recognized two exceptions to its general statement that new rules do not apply retroactively to cases on collateral review. The two exceptions were for (i) rules which place certain primary, private individual conduct beyond the authority of criminal law, and (ii) "bedrock" procedural rules which implicate the fundamental fairness of the criminal proceeding. *Teague,* 489 U.S. at 307, 311–12, 109 S.Ct. at 1073–74, 1075–76. The latter exception does not pertain here; the former is discussed further in Part III.B.3, *infra.*

**16.** *See Teague,* 489 U.S. at 299, 300, 316, 109 S.Ct. at 1069, 1069–70, 1078; *see also Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Turner v. Williams,* 35 F.3d 872, 878, 885 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995).

**17.** *See Mackey,* 401 U.S. at 681 n. 1, 91 S.Ct. at 1174 n. 1.

**18.** *See Teague,* 489 U.S. at 327 n. 1, 109 S.Ct. at 1084 n. 1 (Brennan, J., dissenting) (noting that majority leaves open whether *Teague* analysis applies to § 2255 claims).

claims.[19] Others have applied *Teague*'s standards in § 2255 cases without discussion.[20] The Supreme Court justified *Teague*'s approach to retroactivity on two principal policy bases, namely (i) society's interest in the finality of criminal convictions, and (ii) federalism and comity principles which caution against instruction on states' criminal judgments. 489 U.S. at 308–10, 109 S.Ct. at 1074–75. Although federalism is irrelevant to § 2255 proceedings, finality concerns pertain equally to § 2255 motions and other forms of collateral review.[21] Moreover, basic principles of equality counsel against giving more favorable treatment to federal prisoners' claims than to identical claims presented by state prisoners. *See Elortegui,* 743 F.Supp. at 831. Thus, *Teague*'s analysis must be applied to § 2255 claims in the same manner as to other forms of collateral review.

**19.** *See Van Daalwyk v. United States,* 21 F.3d 179, 181–83 (7th Cir.1994); *Gilberti v. United States,* 917 F.2d 92, 94–95 (2d Cir.1990); *United States v. Valladares–Tesis,* 762 F.Supp. 465, 467 (D.P.R.1991); *Elortegui v. United States,* 743 F.Supp. 828, 831 (S.D.Fla.1990), *aff'd without opinion,* 943 F.2d 1317 (11th Cir.1991), *cert. denied,* 502 U.S. 1116, 112 S.Ct. 1229, 117 L.Ed.2d 464 (1992); *Hrubec v. United States,* 734 F.Supp. 60, 65 (E.D.N.Y.1990).

**20.** *See, e.g., United States v. Judge,* 944 F.2d 523, 525 (9th Cir.1991), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992); *United States v. Makaweo,* 730 F.Supp. 1016, 1017 (D.Haw.1990), *aff'd,* 956 F.2d 275 (9th Cir.1992) (unpublished opinion); *United States v. Rubio,* 722 F.Supp. 77, 84 (D.Del.1989), *aff'd,* 908 F.2d 965 (3d Cir.) (unpublished opinion), *cert. denied,* 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990); *cf. United States v. Pavlico,* 961 F.2d 440, 443 (4th Cir.) (noting in dicta that *Teague* is one of the procedural obstacles facing § 2255 claims), *cert. denied,* — U.S. —, 113 S.Ct. 144, 121 L.Ed.2d 96 (1992); *United States v. Ayala,* 894 F.2d 425, 429 n. 8 (D.C.Cir.1990) (same).

**21.** *Cf. Andiarena v. United States,* 967 F.2d 715, 717 (1st Cir.1992) (finding "abuse of writ" doctrine, developed in § 2254 cases, applies to § 2255 cases as well because finality interests are critical in both state and federal criminal justice systems).

**22.** Tayman suggests a potential ground for distinction between new constitutional and nonconstitutional rules, but it is not ultimately compelling. At least one circuit has held that the notion of a "new statutory rule" is incoherent because it "would indicate that a federal statute duly enacted by Congress could mean one thing

**2.**

█ Analysis also points persuasively to the conclusion that *Teague* applies to new statutory and common-law rules, as well as to new constitutional decisions. Tayman contends that only constitutional rules are subject to limited retroactivity under *Teague*. Yet, there is nothing in the reasoning of *Teague* or related opinions to justify a distinction between new constitutional and nonconstitutional rules.[22] The policy concerns that motivated *Teague*, especially the need for finality, apply equally to both types of rules. In fact, if a distinction were drawn, new statutory and common-law rulings should receive even less retroactive application than constitutional ones, since the latter are generally more fundamental and essential to justice.[23] Thus, a number of courts have held that *Teague*'s analysis governs the

prior to the Supreme Court's interpretation and something entirely different afterwards." *Brough v. United States,* 454 F.2d 370, 372–73 (7th Cir.1971); *see also Strauss v. United States,* 516 F.2d 980, 983 (7th Cir.1975); *Gates v. United States,* 515 F.2d 73, 78 (7th Cir.1975). In other words, with statutes, there cannot be an old rule supplanted by a new one, but merely a wrong rule replaced by the correct one. If this view of statutory interpretation is taken, all decisions that interpret statutes must be applied fully retroactively, and it is illogical to apply *Teague*'s analysis to them. This ground for distinction is unavailing for several reasons. First, no support exists for it in the opinions in *Teague* and its progeny. Second, Justice Harlan squarely rejected this view of law in the primary opinion on which *Teague*'s approach is based. *See Mackey,* 401 U.S. at 678, 91 S.Ct. at 1173 ("I do not subscribe to the Blackstonian theory that the law should be taken to have always been what it is said to mean at a later time. . . ."). Third, this view of law, if accepted, proves too much for it applies to constitutional as well as statutory interpretation, and therefore does not justify a distinction between constitutional and non-constitutional claims. *See Harper,* — U.S. at —, 113 S.Ct. at 2522 (Scalia, J., concurring) (finding any non-retroactive application of decisions conflicts with judges' obligation to "find" rather than "make" law); *James B. Beam Distilling,* 501 U.S. at 548–49, 111 S.Ct. at 2450 (Scalia, J., concurring in judgment) (same).

**23.** *See Hrubec,* 734 F.Supp. at 65 (if *Teague*'s retroactivity standard is "applicable to alleged constitutional violations, it follows a *fortiori* that *Teague* must be applicable to violation of a statute, which is of lesser importance").

retroactivity on collateral review of non-constitutional rulings.[24] It therefore appears that the Supreme Court's repeated statement that *Teague*'s analysis applies to "new constitutional rules" is merely a vestige of the fact that this analysis originated in cases involving only constitutional claims, and does not represent a restriction limiting *Teague*'s reach. In sum, *Teague* controls the retroactive application of a new rule in § 2255 proceedings, whether or not the rule is based on the Constitution.

### 3.

Finally, it is necessary to consider whether *Teague* applies to decisions concerning substantive criminal law as well as to rules of criminal procedure. Logic and precedent compel the conclusion that the distinction between substantive and procedural rulings is a critical one, and that *Teague*'s analysis applies only to rules of criminal procedure. As Tayman argues, substantive crimi-

nal decisions apply retroactively to cases on collateral as well as on direct review.

The distinction in retroactive effect between new procedural and substantive rules predates *Teague*. During the period when *Linkletter*'s balancing approach was used to determine the retroactivity of new rules of criminal procedure, the Supreme Court acknowledged that this approach did not readily apply to rules whose "practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." *Robinson v. Neil,* 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973). Thus, the Supreme Court "recognized full retroactivity as a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place." *United States v. Johnson,* 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982) (citing cases); *see Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974).[25] The government concedes, as it must, that

24. Some courts have explicitly recognized and rejected the potential distinction under *Teague* between constitutional and non-constitutional claims. *See Valladares Tesis,* 762 F.Supp. at 467; *Hrubec,* 734 F.Supp. at 65; *United States v. Baron,* 721 F.Supp. 259, 261 (D.Haw.1989), *rev'd on other grounds, United States v. Judge* 944 F.2d 523 (9th Cir.1991), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992). Other courts have simply applied *Teague*'s analysis to non-constitutional rulings without discussion. *See, e.g., Andiarena,* 967 F.2d at 717; *Harris v. Vasquez,* 949 F.2d 1497, 1512 (9th Cir.1991); *Judge,* 944 F.2d at 525; *Gilberti,* 917 F.2d at 94–95; *Elortegui,* 743 F.Supp. at 831; *Makaweo,* 730 F.Supp. at 1017; *Rubio,* 722 F.Supp. at 85–86; *cf. United States v. France,* 886 F.2d 223, 227 n. 2 (9th Cir.1989) (suggesting *Teague* would apply, but avoiding question), *aff'd without opinion by equally divided court,* 498 U.S. 335, 111 S.Ct. 805, 112 L.Ed.2d 836 (1991). No courts have held to the contrary, although several have held that *Teague* does not apply to procedural rules that involve *habeas* jurisdiction rather than the Constitution. This is sensible because, if new rules concerning *habeas* jurisdiction could not be announced in *habeas* cases, they could never be announced at all. *See Coe v. Thurman,* 922 F.2d 528, 534 (9th Cir.1990); *Young v. Herring,* 917 F.2d 858, 862 n. 1 (5th Cir.1990); *Peterson v. Scully,* 896 F.2d 661, 664 (2d Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); *but see Harmon v. Barton,* 894 F.2d 1268, 1272 n. 8 (11th Cir.) (applying *Teague* to non-constitutional rule of *habeas* jurisdiction), *cert. denied,* 498 U.S. 832, 111 S.Ct. 96, 112

L.Ed.2d 68 (1990); *Hill v. McMackin,* 893 F.2d 810, 814 (6th Cir.1989) (same).

25. The Supreme Court held in *Davis* that § 2255 provides relief where an intervening judicial decision establishes that the defendant suffered "conviction and punishment ... for an act that the law does not make criminal." *See Davis,* 417 U.S. at 346, 94 S.Ct. at 2305. While *Davis* strictly held only that § 2255 relief was available *if* the intervening decision was retroactive to cases on collateral review, it has been widely understood to stand also for the separate proposition that such a decision *must* be retroactive to cases on collateral review. *See Chambers v. United States,* 22 F.3d 939, 942–43 (9th Cir. 1994), *opinion vacated on other grounds,* 47 F.3d 1015 (9th Cir.1995); *United States v. Sood,* 969 F.2d 774, 775 (9th Cir.1992); *United States v. McClelland,* 941 F.2d 999, 1001 (9th Cir.1991); *Callanan v. United States,* 881 F.2d 229, 231–32 (6th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990); *Belt v. United States,* 868 F.2d 1208, 1210–11 n. 2 (11th Cir.1989), *aff'g* 679 F.Supp. 1088, 1090–91 (M.D.Fla.1988); *United States v. Osser,* 864 F.2d 1056, 1058–59 (3d Cir.1988); *United States v. Shelton,* 848 F.2d 1485, 1488–90 & n. 3 (10th Cir.1988); *Ingber v. Enzor,* 841 F.2d 450, 453–54 (2d Cir.1988); *United States v. Bonnette,* 781 F.2d 357, 363–64 (4th Cir.1986); *McClain v. United States,* 643 F.2d 911, 913 (2d Cir.), *cert. denied,* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981); *United States v. Loschiavo,* 531 F.2d 659, 662–67 (2d Cir.1976).

this principle remains viable today.[26] Moreover, although *Johnson* cited only cases involving the retroactivity of constitutional rulings, it is clear that the principle described in *Johnson* is not limited to new constitutional decisions.[27] Relying on *Davis*, the Fourth Circuit panel decision in *United States v. Bonnette*, 781 F.2d 357 (4th Cir.1986),[28] recognized that "when a court reinterprets a criminal statute so as to narrow it, thus essentially repealing the statute as to some defendants," the decision applies retroactively and may be utilized to overturn a conviction by means of a § 2255 motion. 781 F.2d at 362.[29] In sum, a rule of substantive criminal law, even if a novel interpretation of a criminal statute, must be applied retroactively to cases on collateral review as well as direct appeal.

This conclusion is reinforced by *Teague*. In the opinions in which Justice Harlan de-

veloped the analysis later adopted by the Supreme Court in *Teague* and its progeny, Harlan emphasized that his analysis was written only with rules of "procedural due process" in mind, and that rules of "substantive due process" must stand on a different footing. *Mackey*, 401 U.S. at 692, 91 S.Ct. at 1180. He characterized the latter set of rules as "those that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* He noted that *habeas corpus* had traditionally been available for attacking convictions based on such rules, and should remain so.

Following Justice Harlan's lead, the Supreme Court in *Teague* and succeeding cases also distinguished between procedural and substantive rules. First, the Supreme Court repeatedly stated that *Teague* applies only to new rules of criminal procedure.[30] More-

**26.** For cases recognizing that this line of authority survives *Teague*, see *Chambers*, 22 F.3d at 942; *Ianniello v. United States*, 10 F.3d 59, 63 (2d Cir.1993); *United States v. Woods*, 986 F.2d 669, 676–77 (3d Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 90, 126 L.Ed.2d 58 (1993); *Sood*, 969 F.2d at 776; *McClelland*, 941 F.2d at 1001; *Callanan*, 881 F.2d at 231–32 & n. 1. Several decisions rendered prior to *Teague* also recognized the distinction between procedure and substance with respect to retroactivity. *See Belt*, 868 F.2d at 1210–11 n. 2; *Osser*, 864 F.2d at 1058; *Ingber*, 841 F.2d at 454 n. 1.

**27.** This point was recognized by several circuits dealing with § 2255 motions filed in the wake of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Supreme Court held in *McNally* that the property rights protected by the federal mail fraud statute, 18 U.S.C. § 1341, do not include "the intangible right of the citizenry to good government." 483 U.S. at 356, 107 S.Ct. at 2879. *McNally* involved solely statutory, rather than constitutional, construction. Despite this, the circuits addressing the issue have unanimously concluded that *Johnson* and *Davis* mandate retroactive application of *McNally* to cases on collateral review, without regard to the *Linkletter* balancing factors or to the *Teague* analysis. Several circuits reached this conclusion with respect to claims raised, as here, by § 2255 motion. *See Callanan*, 881 F.2d at 231–32; *United States v. Marcello*, 876 F.2d 1147, 1153 (5th Cir.1989); *United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir.1989); *Magnuson v. United States*, 861 F.2d 166, 167 (7th Cir.1988); *Shelton*, 848 F.2d at 1488–90; *Ingber*, 841 F.2d at 453–54. Others, including the Fourth Circuit, reached this same conclusion with respect to claims raised collaterally by ap-

plication for writ of error *coram nobis*. *See Marcello*, 876 F.2d at 1154; *Allen v. United States*, 867 F.2d 969, 971 (6th Cir.1989); *Osser*, 864 F.2d at 1058–59; *United States v. Mandel*, 862 F.2d 1067, 1074–75 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989); *United States v. Keane*, 852 F.2d 199, 204–05 (7th Cir.1988), *cert. denied*, 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989). The same principle has been applied to decisions of substantive criminal law involving other criminal statutes. *See Sood*, 969 F.2d at 775 (granting *habeas* relief in light of new decision interpreting bribery statute, 18 U.S.C. § 666); *McClelland*, 941 F.2d at 1001 (extending *coram nobis* relief in light of new decision interpreting extortion statute, 18 U.S.C. § 1951(a)).

**28.** In *Bonnette*, the defendant sought § 2255 relief after the Supreme Court decided in *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), that a violation of the federal bank fraud statute, 18 U.S.C. § 1014, does not necessarily occur where the jury finds that "check-kiting" took place. 781 F.2d at 360 n. 6.

**29.** The *Bonnette* panel noted that this principle held true "whether the change is constitutional or nonconstitutional." *Id.* at 364.

**30.** *See Teague*, 489 U.S. at 299, 300, 316, 109 S.Ct. at 1069, 1069–70, 1078; *see also Lockhart v. Fretwell*, — U.S. —, —, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Wright v. West*, — U.S. —, —, 112 S.Ct. 2482, 2489, 120 L.Ed.2d 225 (1992); *Holland v. Illinois*, 493 U.S. 474, 486, 110 S.Ct. 803, 810, 107 L.Ed.2d 905 (1990).

over, the Supreme Court carved an exception to *Teague*'s analysis for rules placing "primary, private individual conduct" beyond the criminal law's reach. 489 U.S. at 307, 109 S.Ct. at 1073 (quoting *Mackey*, 401 U.S. at 692, 91 S.Ct. at 1180). As set forth in *Teague*, this exception covered only "new rules according constitutional protection to an actor's primary conduct," but the Supreme Court subsequently recognized that it properly included the remainder of the Constitution's substantive guarantees. *Penry v. Lynaugh*, 492 U.S. 302, 329–30, 109 S.Ct. 2934, 2952–53, 106 L.Ed.2d 256 (1989); *see also Saffle v. Parks*, 494 U.S. 484, 494, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990). In particular, the Court held that *Teague*'s exception applied to a newly-announced rule that the Constitution "deprives the State of the power to impose a certain penalty." *Penry*, 492 U.S. at 330, 109 S.Ct. at 2953.

The Supreme Court has never applied *Teague*'s exception to a non-constitutional, substantive rule. Yet, it has never had the occasion to do so, having considered *Teague* solely in cases involving constitutional claims. If *Teague*'s general analysis applies to non-constitutional claims, as the government argues and Part II.B.2. of this opinion concludes, *Teague*'s exceptions must apply to non-constitutional claims as well. The relevant exception, therefore, must exempt substantive rules from *Teague*'s reach, whether or not they are based on federal statutes or on the Constitution. As a result, *Teague* is wholly consistent with the line of Supreme Court authority that includes *Robinson, Davis,* and *Johnson.* Together, the cases clearly establish that substantive rules of criminal law must be applied retroactively to cases on collateral review.[31]

It is important to note that the Supreme Court's distinction between procedural and substantive rules is soundly grounded in policy considerations. There is a far greater willingness to correct criminal judgments that are later deemed to be substantively incorrect than there is to upset convictions, especially state convictions, obtained in reliance on procedures then thought valid.[32] In addition to the greater injustice involved in punishing a defendant for conduct that courts later decide was not prohibited, reinterpretations of substantive criminal law give rise to the notion that the trial court never had jurisdiction to impose the criminal sanction.[33] Finally, as Justice Harlan noted, where substantive rules are at issue, "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." *Mackey*, 401 U.S. at 693, 91 S.Ct. at 1180.

It is therefore plain, in logic and precedent, that *Teague*'s analysis applies only to new rules of criminal procedure, and not to new rules of substantive criminal law. In the case at bar, the critical question therefore becomes whether the rule announced in *Irvin* was substantive or procedural in nature.

### B.

█ It is clear that *Irvin*'s rule was substantive rather than procedural. Although the government correctly notes that the line separating procedure and substance is not always a bright one,[34] it is plain that *Irvin*

31. The fact that *Teague*'s exception, properly construed, is in harmony with the Supreme Court's earlier rulings on the retroactivity of substantive criminal decisions has been previously noted. *See Woods*, 986 F.2d at 678 & n. 16; Blume & Pratt, *supra note 9*, at 836 & nn. 147–48; Liebman, *supra note 9*, at 836 & n. 447. Thus, contrary to some commentators' suggestions, *Teague*'s exception incorporates, rather than contradicts, the distinction between procedure and substance. *See* Dubber, *supra note 9*, at 9–10 ("If *Teague* does not apply to such a [substantive] rule, the first exception becomes superfluous.").

32. *See Teague*, 489 U.S. at 310, 109 S.Ct. at 1075; *see also Robinson*, 409 U.S. at 509–10, 93 S.Ct. at 878–79 (noting that retroactivity of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), merely prevented states from imposing capital punishment, "without the necessity of a redetermination of the factual question of whether the offense had in fact been committed").

33. *See, e.g., Gosa v. Mayden*, 413 U.S. 665, 693–94, 93 S.Ct. 2926, 2943, 37 L.Ed.2d 873 (1973) (Marshall, J., dissenting); *Michigan v. Payne*, 412 U.S. 47, 61, 93 S.Ct. 1966, 1974, 36 L.Ed.2d 736 (1973) (Marshall, J., dissenting).

34. *See Robinson*, 409 U.S. at 509, 93 S.Ct. at 878 ("[W]e would not suggest that the distinction that we draw is an ironclad one that will invariably

falls squarely on the latter side of that line. *Irvin* involved the scope of a criminal penalty provision. Specifically, the question presented in *Irvin* was what conduct triggers the penalties set forth in 21 U.S.C. § 841(b). The panel held that the mandatory minimum sentences in § 841(b) do not apply to defendants who participated in conspiracies that trafficked in the stated quantities of narcotics unless the required quantity was reasonably foreseeable to the defendant. Thus, *Irvin* did not "prescribe procedural rules that govern the conduct of a trial." *Robinson,* 409 U.S. at 509, 93 S.Ct. at 878. It did not relate to the processes by which criminal judgments are obtained.[35] Instead, it recognized that the "trial court lacked authority" to impose a mandatory minimum sentence on Irvin based on amounts that were not reasonably foreseeable to him. *Johnson,* 457 U.S. at 550, 102 S.Ct. at 2587. In other words, *Irvin* "reinterpret[ed] a criminal statute so as to narrow it, thus essentially repealing the statute as to some defendants." *Bonnette,* 781 F.2d at 362. In short, *Irvin* is plainly a ruling concerning substantive criminal law.

The government contends that *Irvin* is not a substantive decision because it did not wholly "decriminalize" any conduct.[36] According to the government, a judicial decision is substantive only if it establishes that a defendant is being punished for conduct which does not constitute a crime. Tayman admits that he committed a crime, and contends only that he erroneously received an unwarranted sentence under 21 U.S.C. § 841(b).

The government's argument unduly narrows the definition of a substantive rule. A substantive rule may establish that the defendant was innocent or that he should not have been convicted of a crime, but not all substantive rules do so.[37] A sentencing rule that determines how much or what type of punishment can be imposed for a crime is also plainly substantive.[38] This point is aptly demonstrated by *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), in which the Supreme Court held that the Constitution forbids the imposition of the death penalty under the circumstances and the statute presented in the case. The decision merely forestalled imposition of a partic-

result in the easy classification of cases in one category or the other.").

**35.** The *Irvin* opinion phrases the question presented as "whether a district court must determine the quantity of narcotics reasonably foreseeable to each individual coconspirator prior to a determination of the applicability of the mandatory minimum sentencing provisions of § 841(b)." 2 F.3d at 73. This phrasing does have a procedural ring to it. Yet, every substantive ruling can be phrased to sound similarly procedural. For example, where a new decision announces that specific intent is an element of a statutory criminal offense, the issue can be phrased as "whether a court must determine that the defendant had specific intent prior to a determination of the applicability of the statute." Although *Irvin*'s rule may be phrased procedurally, its underlying nature is substantive.

**36.** The government's position finds some support in language in several Supreme Court opinions describing *Teague*'s exception as pertaining to rules that "decriminalize" a class of conduct or bar imposition of the death penalty. *See Gilmore v. Taylor,* —— U.S. ——, ——, 113 S.Ct. 2112, 2119, 124 L.Ed.2d 306 (1993); *Saffle,* 494 U.S. at 495, 110 S.Ct. at 1264. Again, the Supreme Court has never been required to decide whether *Teague*'s exception applies to a rule, as is involved here, that is substantive but does not

wholly decriminalize any conduct or relate to the death penalty. The passages in *Gilmore* and *Saffle* therefore are accurate descriptions of the *Teague* exception's application in past cases, but are not necessarily comprehensive statements of the exception's entire reach.

**37.** The government does not cite any cases holding that a decision is substantive *only* if it provides that defendant should not have been convicted of any crime. Rather, it merely cites substantive decisions that happened to be of that kind. *See Woods,* 986 F.2d at 677 ("In *Davis,* as in *nearly all* the decisions in which courts have retroactively applied a new substantive criminal decision, the defendant's conviction itself was potentially invalid due to an intervening change in law.") (emphasis added).

**38.** One court suggested that such a rule involves a mixture of procedure and substance, a hybrid "on a continuum midway between the procedural and substantive standards." *Woods,* 986 F.2d at 678 (considering retroactivity of decision that statute authorizes restitution only for losses stemming from the offense for which defendant was convicted, and not dismissed charges). Yet, it is difficult to see how a rule is more procedural and less substantive because it relates to *how much* punishment is imposed, and not to *whether* punishment is imposed.

ular punishment, and did not require states to readjudicate guilt in any cases. *See Robinson*, 409 U.S. at 509, 93 S.Ct. at 878. Even so, for reasons too obvious to require elaboration, the rule announced in *Furman* was cited by the Supreme Court as a prime example of the type of substantive rule that must receive full retroactive application. *Johnson*, 457 U.S. at 550, 102 S.Ct. at 2587.[39] A more recent example of a substantive, sentencing-related decision is *Penry v. Lynaugh*, 492 U.S. 302, 329–30, 109 S.Ct. 2934, 2952–53, 106 L.Ed.2d 256 (1989). There, the Supreme Court held that the Eighth Amendment prohibits execution of a mentally-retarded person. Again, *Penry* did not establish that the defendant's conduct was not a crime, or that he deserved no punishment. Instead, like *Furman* and *Irvin*, it merely restricted the application of a particular punishment. Even so, the Supreme Court *unanimously* agreed that this new constitutional interpretation fell squarely within *Teague*'s exception for substantive criminal rules.

The fact that *Irvin* involved mandatory minimum sentences rather than the death penalty does not make it any less substantive. At least one recent decision reflects this sound conclusion. In *United States v. Bermudez*, 742 F.Supp. 556 (C.D.Cal.1990), the defendant sought retroactive application on collateral review of a Ninth Circuit decision establishing that he erroneously received a mandatory minimum sentence under the provisions of the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e). Distinguishing the case as involving "a substantive interpretation of a federal criminal statute," as opposed to a new rule of criminal procedure, the court held that it was fully retroactive. 742 F.Supp. at 558. Analogously, although *Irvin* did not establish that Tayman or anyone else had been convicted of conduct that was not a crime, it clarified the applicability of the mandatory minimum sentences in 21

U.S.C. § 841(b) and therefore constituted a rule of substantive criminal law.

In sum, *Irvin* announced a rule of substantive criminal law, rather than a rule of criminal procedure. Sound authority and reasoning thus compel the conclusion that *Irvin* must be applied retroactively to cases on collateral review.

## IV.

■ This is not to say that collateral relief under § 2255 may be obtained based on *any* decision that announces a new rule of substantive criminal law. In other words, not every retroactive decision can be used to invalidate a conviction or sentence that is already final. Courts must carefully distinguish between the question of retroactivity, a matter of choice of law, and the further question of remedies. *See James B. Beam Distilling*, 501 U.S. at 535, 538, 111 S.Ct. at 2443, 2444–45 (Souter, J., plurality).[40] Several additional hurdles must be surpassed before a retroactive decision will entitle a defendant to collateral relief.

### A.

Where, as here, the grounds for a § 2255 motion are neither constitutional nor jurisdictional, it is well-established that the defendant cannot obtain collateral relief unless the situation presents "exceptional circumstances" and involves "a fundamental defect" creating "a complete miscarriage of justice." *See United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979); *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *Davis*, 417 U.S. at 346, 94 S.Ct. at 2305; *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). To meet this requirement, the defendant need not allege or prove that he is innocent. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir.1988) (court granting collateral relief is not required "to decide if the peti-

---

39. *Furman* was applied retroactively in *Walker v. Georgia*, 408 U.S. 936, 92 S.Ct. 2845, 33 L.Ed.2d 753 (1972), and in *Moore v. Illinois*, 408 U.S. 786, 800, 92 S.Ct. 2562, 2570–71, 33 L.Ed.2d 706 (1972).

40. *Cf. Hankerson v. North Carolina*, 432 U.S. 233, 244 n. 8, 97 S.Ct. 2339, 2345 n. 8, 53 L.Ed.2d 306 (1977) (distinguishing retroactive availability of a decision from the right to enjoy that retroactivity after a procedural default).

tioners are bad men or even if they have committed crimes"), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). Collateral relief is also available in exceptional circumstances to defendants who challenge only the extent of their punishment. *See United States v. Maybeck,* 23 F.3d 888, 894 (4th Cir.1994) (granting § 2255 relief to defendant improperly classified as career offender and exposed to higher sentencing range); *Bermudez,* 742 F.Supp. at 558.[41] Because no reasonable foreseeability determination was made, it is impossible to know what Tayman's proper sentence should have been. If Tayman's allegations prove true, and less than twenty kilograms of marijuana was reasonably foreseeable to him, his proper sentence may have been a mere one-fourth of the five-year sentence he received, far less than the amount of time he has already served. It is wholly unacceptable to suggest that, because a defendant was involved in a drug distribution conspiracy, no miscarriage of justice occurred in imprisoning him for a period significantly longer than was appropriate under the law. It is unacceptable because injustices befall the guilty as well as the innocent, for justice consists not only of convicting the guilty, but also of assigning them a lawful and just punishment.[42] Where a mandatory minimum sen-

41. Several decisions have held that the requisite "exceptional circumstances" were not present where defendants sought § 2255 relief based on alleged non-constitutional, non-jurisdictional errors in their sentences. *See, e.g., United States v. Segler,* 37 F.3d 1131, 1134 (5th Cir.1994); *Knight v. United States,* 37 F.3d 769, 772–73 (1st Cir. 1994); *United States v. Towe,* 26 F.3d 614, 616 (5th Cir.1994); *United States v. Faubion,* 19 F.3d 226, 232–33 (5th Cir.1994); *Scott v. United States,* 997 F.2d 340, 341–42 (7th Cir.1993); *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992). These decisions are distinguishable in several important respects. Each involved errors in the application of the Sentencing Guidelines. In contrast, Tayman's claim is based on the misapplication of a federal statute, and therefore falls more squarely within the scope of § 2255. *See* 28 U.S.C. § 2255 (relief available for claim that "sentence was imposed in violation of the Constitution or laws of the United States"). Moreover, in the cases cited here, the alleged errors resulted, at most, in small increases in sentence. *See, e.g., Knight,* 37 F.3d at 773 (if error corrected, new sentencing range would still include existing sentence). If Tayman's allegations are correct, he may have received a sentence three to four times greater than was appropriate. Finally, these courts rested heavily on the fact that the defendants did not appeal the sentencing errors, that § 2255 should not be used as a substitute for appeal, and that the defendants did not "allege that there have been any new legal or factual developments" justifying the failure to appeal. *Knight,* 37 F.3d at 773. In the case at bar, *Irvin* constitutes a significant legal development arising in the period since Tayman's sentencing. *See supra* notes 46–55 and accompanying text.

42. The government relies heavily here on *United States v. Woods,* 986 F.2d 669 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 90, 126 L.Ed.2d 58 (1993). *See also United States v. Landrum,* 870 F.Supp. 699 (E.D.Va.1994) (following *Woods*). There, the defendant sought retroactive application on collateral review of a newly-announced decision that under the Victim and Witness Protection Act, 18 U.S.C. §§ 3579, 3580, courts may order restitution only for losses stemming from the offense of conviction, and not dismissed charges. The court declined to award collateral relief on the ground that Woods had not demonstrated that he suffered the requisite miscarriage of justice. Yet, *Woods* was a narrow ruling, and the opinion expressly noted that "our decision today should not establish a general rule with respect to the retroactivity of new sentencing decisions." 986 F.2d at 679 n. 18. Thus, several critical factors distinguish *Woods* from the case at bar. First, the *Woods* court found that the rule in question involved a mixture of substance and procedure. *See supra* note 38. By contrast, *Irvin's* rule is plainly substantive. Second, the *Woods* opinion properly placed great weight on the fact that the defendant "claims to have been wrongfully deprived not of his liberty, but of his money." 986 F.2d at 680–81. It therefore distinguished *Bermudez,* 742 F.Supp. 556, on the ground that it involved a defendant who allegedly "received unauthorized sentence enhancements, resulting in increased prison time." 986 F.2d at 679 n. 18. The case at bar, like *Bermudez,* involves a person alleging that he has been imprisoned for a term of erroneous length. As *Woods* recognized, restitution is simply not on par with unlawful imprisonment. Third, the *Woods* court found there was no miscarriage of justice because the defendant was ordered to pay restitution rather than a fine. He did not deny that the restitution amounts were properly calculated, that he in fact owed the money to the victims who received it, and that he could be held liable in a civil action for the same amount. 986 F.2d at 679–80. In essence then, Woods conceded that the restitution was an appropriate punishment, even though it was not authorized by the statute under which it was ordered. By contrast, Tayman alleges that his five-year sentence was not warranted by 21 U.S.C. § 841(b) or any other authority. Fourth, the defendant in *Woods* sought relief after he had already paid the restitution. The *Woods* panel

tence was imposed in violation of *Irvin*'s rule, a sentence that is substantially more harsh than the law otherwise provides, exceptional circumstances warranting collateral relief under § 2255 are plainly present. Thus, Tayman and the government will have the opportunity at an evidentiary hearing to present evidence as to the accuracy of Tayman's allegations concerning the reasonably foreseeable drug quantity.

### B.

Finally, *Irvin* is of no benefit to Tayman, even if it applies retroactively to his case, unless it establishes an error in his sentence. The record reveals that, contrary to *Irvin*'s requirement, there was no determination of the quantity of marijuana that was reasonably foreseeable to Tayman prior to the imposition of the mandatory minimum sentence. *See Irvin*, 2 F.3d at 78. Tayman pled guilty to a criminal information that attributed one hundred kilograms to the conspiracy, but the criminal information, plea agreement, and accompanying statement of facts were silent as to the quantity that was reasonably foreseeable to Tayman.[43] The Pre–Sentence Investigation Report used the one hundred kilo-

gram figure because that was the amount to which Tayman pled guilty. Neither party having objected to the one hundred kilogram quantity, the Court imposed a five-year mandatory minimum sentence based on that quantity.[44] At sentencing, the Court noted that Tayman was being held responsible for one hundred kilograms, the full amount "he reasonably should have known" was distributed by the conspiracy. Yet, there was no occasion for the Court to evaluate whether the facts showed that one hundred kilograms was reasonably foreseeable to Tayman.[45] In sum, the Court did not engage in the reasonable foreseeability analysis required by *Irvin* because the issue was not raised by either party.

Failure to raise an issue in the original proceeding or on direct appeal ordinarily constitutes procedural default barring collateral review. Under these circumstances, § 2255 relief may be obtained only if "cause and prejudice" are shown. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Maybeck*, 23 F.3d at 891; *United States v. Rowland*, 848 F.Supp. 639, 644–45 (E.D.Va.1994).[46] Thus, to obtain

---

correctly recognized that the injustice is less, and society's interest in finality is greater, where the sentence collaterally attacked has already been fully served. 986 F.2d at 681–82. Tayman is of course still in prison under the sentence from which he seeks relief.

**43.** *See United States v. Gilliam*, 987 F.2d 1009, 1013–14 & n. 3 (4th Cir.1993) (holding that district court may not base determination of what drug quantity is reasonably foreseeable to defendant on his guilty plea to indictment that is "generally worded" and "did not identify or ascribe any specific amount attributable to [the defendant] as opposed to the conspiracy as a whole").

**44.** Defendant's failure to object to a figure recommended in the Pre–Sentence Investigation Report is one method by which the government may meet its burden of proving the amount of drugs that was reasonably foreseeable to the defendant. *See Gilliam*, 987 F.2d at 1013; *United States v. Terry*, 916 F.2d 157, 162 (4th Cir.1990).

**45.** In the absence of objection, the Court was under no obligation to evaluate the factual basis for the one hundred kilogram quantity. Only where information in the Pre–Sentence Investigation Report is in "reasonable dispute" must the district court determine whether there is

"sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also* Rule 32(c)(3)(D), Fed.R.Crim.P. (court must make finding as to Pre–Sentence Investigation Report's accuracy if factual inaccuracy is alleged by defendant, counsel, or other source). In other words, a district court may freely rely on the report's recommendation of a drug quantity attributable to the defendant unless an objection to the amount is made. *See Gilliam*, 987 F.2d at 1014 (defendant has "affirmative duty" to show that the report contains unreliable information); *Terry*, 916 F.2d at 162 (same); *see also United States v. Strothers*, 36 F.3d 1095, 1994 WL 530138 (4th Cir.1994) (unpublished) (district court need only make § 6A1.3(a) finding of reliability if defendant challenges accuracy of facts in Pre–Sentence Investigation Report); *United States v. Fortier*, 911 F.2d 100, 102 (8th Cir. 1990); *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir.1990). *But cf. Gilliam*, 987 F.2d at 1013 (stating that government carries its burden "if a defendant fails [to object properly] to a recommended finding in a presentence report that the court determines to be reliable").

**46.** The Tenth Circuit has suggested that substantive rulings of the type described in *Johnson* and *Davis* should give rise to § 2255 relief without regard to whether the defendant had cause for any default. *See Shelton*, 848 F.2d at 1490 n. 4.

§ 2255 relief here, Tayman must show (1) cause excusing his procedural default, and (2) actual prejudice resulting from the error of which he complains. *Frady*, 456 U.S. at 168, 102 S.Ct. at 1594–95.[47] Each requirement is separately addressed.

### 1.

Tayman did not object to the one hundred kilogram figure, or to the mandatory minimum sentence based on it, for the simple reason that *Irvin* had not yet been decided and counsel was not prescient enough to foresee it. Before that decision, neither he nor his counsel knew that 21 U.S.C. § 841(b) incorporated the concept of reasonable foreseeability. In other words, the cause for Tayman's failure to object was the novelty of the subsequent decision in *Irvin.*

■■■ The Supreme Court has held that a defendant seeking collateral relief may be excused for failing to make a contemporaneous objection on the ground that judicial decisions establishing the alleged error were not rendered until after his conviction became final. *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).[48] A subsequent judicial decision will never excuse a procedural default that represents an intentional, tactical decision by competent counsel. *Id.* at 13–14, 104 S.Ct. at 2909. By contrast, a defendant's failure to raise an objection may be excused where the ground for the objection was "reasonably unknown" to counsel until later judicial decisions announced it. *Id.* at 14, 104 S.Ct. at 2909. The overlooked objection must be "so novel that its legal basis is not reasonably available to counsel." *Id.* at 16, 104 S.Ct. at 2910.[49] Thus, the central question is whether Tayman and his counsel's failure to anticipate *Irvin* was reasonable and therefore excusable.

It must be emphasized that Tayman is *not* obligated to show that his counsel rendered ineffective assistance.[50] Because *Irvin* applies retroactively to cases on collateral review, as here, Tayman does not need to invoke his Sixth Amendment rights to establish error in his sentence.[51] *Irvin* alone es-

---

Such an exception to the cause requirement might be limited to instances, unlike the case at bar, where a subsequent decision reveals that the defendant was not guilty of any crime. *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (noting "actual innocence" exception to cause requirement). Because Tayman can show sufficient cause under the customary *Frady* framework, it is unnecessary to consider the existence or scope of an exception to it.

**47.** Several cases have suggested that while *Frady* applies to procedurally-defaulted constitutional claims, a non-constitutional claim that was not raised on direct appeal cannot be pursued under § 2255 even if cause and prejudice are shown. *See Brennan v. United States,* 867 F.2d 111, 120 (2d Cir.), *cert. denied,* 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989); *Bontkowski v. United States,* 850 F.2d 306, 313 (7th Cir.1988); *Norris v. United States,* 687 F.2d 899, 900 (7th Cir.1982); *cf. Rowland,* 848 F.Supp. at 641 n. 2 (discussing this line of cases without deciding its merit). This is not the rule in the Fourth Circuit. *See Maybeck,* 23 F.3d at 888; *see also United States v. Essig,* 10 F.3d 968, 976–79 (3d Cir. 1993). Moreover, all courts recognize that a non-constitutional claim may proceed under § 2255, despite the failure to appeal, where the defendant shows "exceptional circumstances" that result in a "complete miscarriage of justice." *Brennan,* 867 F.2d at 117 (quoting *Davis,* 417 U.S. at 346–47, 94 S.Ct. at 2305). Tayman has made this showing. *See supra* notes 41–42.

**48.** Although *Ross* involved a defaulted constitutional claim, its analysis applies equally to claims based on new interpretations of statutes or the common law. *See, e.g., Shelton,* 848 F.2d at 1490; *Ingber,* 841 F.2d at 454–55; *cf. Bonnette,* 781 F.2d at 361 (discussing the "interesting question" whether a non-constitutional change in the law can satisfy *Frady*'s cause requirement).

**49.** *See also Engle v. Isaac,* 456 U.S. 107, 131–33, 102 S.Ct. 1558, 1573–74, 71 L.Ed.2d 783 (1982) (cause excusing procedural default not shown where, because sufficient authority existed at time of trial, "we cannot say that respondents lacked the tools to construct their constitutional claim").

**50.** *Cf. Murray v. Carrier,* 477 U.S. at 485–88, 106 S.Ct. at 2643–45 (where *Reed v. Ross* does not apply, attorney's inadvertence constitutes cause for *habeas* petitioner's procedural default only if it amounts to ineffective assistance).

**51.** By contrast, it is more difficult for a defendant whose conviction is final to take advantage of a subsequent judicial decision that does *not* apply retroactively to cases on collateral review. As an indirect means of obtaining the benefit of such a non-retroactive decision, a defendant may argue that, even if the subsequent decision does not apply to his case, his counsel rendered ineffective assistance by failing to anticipate and argue for the rule subsequently adopted. Courts have consistently foreclosed this "end run"

tablishes the error. Tayman must simply show that *Irvin* was sufficiently novel so that his attorney reasonably did not anticipate it. This determination is a wholly objective one, requiring only an assessment of the relevant legal authorities existing at the time of Tayman's sentencing. By contrast, were Tayman required to prove ineffective assistance to take advantage of *Irvin*, the outcome of this proceeding would be critically influenced by factors unique to Tayman's case, including the fact that Tayman's Sentencing Guidelines range partially exceeded the mandatory minimum sentence. *See infra* note 55. Allowing *Irvin*'s retroactive application to turn on such idiosyncratic factors would severely undermine the Supreme Court's efforts to ensure that similarly situated defendants are treated the same with respect to retroactivity. *See Teague*, 489 U.S. at 303–05, 109 S.Ct. at 1071–72. In other words, if *Irvin* is retroactive, it should apply uniformly to those not sentenced in accordance with it. And it should make no difference that some of those sentenced without the benefit of *Irvin* were

around non-retroactivity by holding that an attorney's failure to anticipate a future decision is not unreasonable. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994); *Clark v. Moran*, 942 F.2d 24, 33 (1st Cir.1991); *Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir.1990); *Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir.1989), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n. 8 (11th Cir.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987); *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A 1981). These cases firmly support Tayman's contention that it is reasonable for attorneys to fail to anticipate future judicial decisions.

52. For example, there was no realistic possibility that, had Tayman's counsel opened the question, the government would have successfully argued that more than one hundred kilograms was reasonably foreseeable to Tayman and thereby obtained a harsher sentence. To reach a higher Sentencing Guidelines range, the government would have had to prove that four hundred or more kilograms of marijuana was reasonably foreseeable to Tayman. *See* U.S.S.G. § 2D1.1. To reach a higher statutory mandatory minimum sentence, the government would have had to prove that one thousand or more kilograms of marijuana was properly attributable to him. *See* 21 U.S.C. § 841(b)(1)(A)(vii). The entire conspiracy did not traffic in amounts this large during the period of Tayman's involvement in it.

represented by lawyers not prescient enough to foresee *Irvin*.

Tayman has shown sufficient cause for not objecting earlier to the imposition of the five-year mandatory minimum sentence. The record contains no indication that Tayman or his counsel withheld objection for tactical reasons.[52] Moreover, Tayman's claim was sufficiently novel at the time of his sentencing in May 1992 to excuse his counsel's failure to raise it.[53] It was then genuinely uncertain whether 21 U.S.C. § 841(b) incorporated the principle of reasonable foreseeability with respect to drug quantities trafficked by a defendant's co-conspirators. No judicial opinions addressing the question had been published.[54] The answer was far from self-evident. The statute itself does not contain the words "reasonably foreseeable." It merely provides that the mandatory minimum sentences apply in cases "involving" the stated quantities of drugs. As the *Irvin* panel recognized, this ambiguous language is susceptible to various interpretations. 2 F.3d at 76–77. Moreover, the legislative his-

53. In the course of litigating Tayman's § 2255 motion, the parties each initially took positions with respect to *Irvin*'s novelty that now run counter to their interests. Assuming that *Teague*'s analysis applied to this case and barred retroactive application of a new rule, the government took the position that *Irvin* was an entirely new rule, settling a novel question that was previously subject to reasonable debate in this circuit. In response, Tayman argued that *Irvin* reached an obvious conclusion based on indisputable and long-settled principles. Because *Teague* does not in fact apply here, the tables have turned. Tayman can obtain relief only if, as the government initially suggested, *Irvin*'s rule was a novel one at the time of his sentencing. Yet, it is unnecessary to hoist either party on its own petard, for it is plain, without regard to either party's concessions, that *Irvin* was novel enough to excuse Tayman's failure to anticipate it.

54. The first published decision on point, *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992), was decided on June 9, 1992, approximately two weeks after Tayman's sentencing. Between *Jones* and *Irvin*, several other circuits addressed the same issue, reaching identical conclusions. *See United States v. Becerra*, 992 F.2d 960, 967 (9th Cir.1993); *United States v. Young*, 997 F.2d 1204, 1209–11 (7th Cir.1993); *United States v. Martinez*, 987 F.2d 920, 925–26 (2d Cir.1993).

tory of § 841 is silent on this issue. It contains no reference to "reasonable foreseeability" or any other standard. *Id.* at 77; *Martinez,* 987 F.2d at 925–26. In the face of this uncertainty, the *Irvin* panel concluded that "the most reasonable interpretation" of the statute was that it incorporates the reasonable foreseeability principle. 2 F.3d at 77. Under these circumstances, Tayman's claim was sufficiently novel at the time of his sentencing so that his counsel's failure to raise it was not unreasonable and may be excused.[55]

**2.**

Tayman must also show that he suffered actual prejudice from his counsel's failure to object to the mandatory minimum sentence. The question presented is therefore what would have happened had Tayman's counsel argued that only a quantity less than one hundred kilograms was reasonably foreseeable to him. Had the government proven by a preponderance of the evidence that one hundred kilograms was reasonably foreseeable to Tayman, he would have received the five-year minimum sentence in any event.

Again, the parties will have the opportunity to present evidence at a hearing as to whether one hundred kilograms of marijuana was reasonably foreseeable to Tayman. For now, it is sufficient to note that the record does not conclusively show that Tayman did not suffer actual prejudice. *See* 28 U.S.C. § 2255. From late 1989 to March 1992, the government believes that the conspiracy as a whole trafficked 400 to 700 kilograms of marijuana. Tayman's involvement in the conspiracy lasted only approximately four months, during which time he personally received and distributed a total of ten pounds (6.25 kilograms) of marijuana. Of course, he could not reasonably have believed that the conspiracy's activities were limited to that amount. He acted as both landlord and occasional chauffeur for Wisenbaker, the head

[55]. This conclusion is not altered by the fact that the upper end of the Sentencing Guidelines range applied to Tayman, 51 to 63 months, exceeded the five-year statutory minimum sentence. Although it was uncertain at the time of Tayman's sentencing in May 1992 whether 21 U.S.C. § 841(b) contained an implicit "reasonable foreseeability" standard, it was very clear, then and now, that the Sentencing Guidelines employ this standard. *See* U.S.S.G. § 1B1.3 commentary n. 1 (added by amendment 78 effective Nov. 1, 1989) (deleted by amendment 439 effective Nov. 1, 1992); *United States v. Willard,* 909 F.2d 780, 781 (4th Cir.1990); *United States v. Goff,* 907 F.2d 1441, 1444–45 (4th Cir.1990); *United States v. Vinson,* 886 F.2d 740, 742 (4th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *cf.* U.S.S.G. § 1B1.3(a)(1)(B) (amended after Tayman's sentencing to include same reasonable foreseeability standard that was previously in commentary). As a result, even if Tayman's counsel believed a five-year minimum sentence was inescapable because he thought Tayman was responsible under § 841(b) for the unforeseeable acts of his co-conspirators, he still might have prudently objected to the use of the one hundred kilogram figure for Sentencing Guidelines purposes in order to lower the sentencing range and thereby spare Tayman the risk of a 61, 62, or 63 month sentence. Yet, for several reasons, this fact does not vitiate the conclusion that Tayman has shown sufficient cause for his failure to object to the one hundred kilogram quantity. First, the government does not argue that defense counsel's failure to seek a lower sentencing range was unreasonable. *Frady*'s "cause and prejudice" requirement is not jurisdictional and is waived to the extent it is not raised by the government. *See United States v. Metzger,* 3 F.3d 756, 757 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994); *United States v. Kenngott,* 840 F.2d 375, 379 (7th Cir.1987); *Washington v. Watkins,* 655 F.2d 1346, 1368 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Second, it is unknown why Tayman's counsel did not seek a lower Sentencing Guidelines range. Several potential, reasonable explanations exist. For example, if Tayman's counsel did not seek a lower range because he assumed that a sentence above the sixty-month statutory minimum would not be imposed, it is clear in retrospect that his assumption was a correct one. Alternatively, if he did not seek a lower range because he believed Tayman was bound by his guilty plea to accept the one hundred kilogram figure for sentencing purposes, this was a reasonable view to have held at that time, although it has been rejected in subsequent decisions. *See Gilliam,* 987 F.2d at 1013–14 (defendant is not bound for sentencing purposes by plea to indictment attributing drug quantity to conspiracy as a whole but without specification of quantity that was reasonably foreseeable to defendant). And third, if it was unreasonable for Tayman's counsel not to seek a lower sentencing range, Tayman may well have a valid claim for ineffective assistance in violation of his Sixth Amendment rights, which claim would entitle Tayman to resentencing and render moot his claim based on *Irvin. See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

of the conspiracy, who was supplying a total of five to ten pounds (approximately three to six kilograms) of marijuana to others each week.[56] Tayman also assisted Wisenbaker by transferring $11,000 to drug sources in Texas, and by purchasing an airline ticket for Wisenbaker to travel in connection with the conspiracy's activities. While the government might have been able to prove from these facts that one hundred kilograms was reasonably foreseeable to Tayman, there is at least a substantial probability that it could not have done so. Had a lower drug quantity been used, it is almost certain that a significantly lower sentence would have been imposed. For example, had the Court found that ninety-nine kilograms was reasonably foreseeable to Tayman, Tayman's sentencing range would have been 41 to 51 months, with no statutory mandatory minimum.[57] In sum, assuming Tayman's allegations are true, the failure of Tayman's counsel to object to the one hundred kilogram figure and the corresponding mandatory minimum sentence does not bar § 2255 relief here.

## V.

Tayman has established that *Irvin* announced a rule of substantive criminal law that applies retroactively to his case, even on collateral review. The reasonable foreseeability analysis required by *Irvin* was not performed prior to the imposition of the mandatory minimum sentence. Moreover, because *Irvin*'s rule was novel and therefore unavailable to Tayman's counsel at the time of sentencing, Tayman's failure to object earlier to his sentence may be excused. An evidentiary hearing is therefore necessary to settle the sole remaining issue, namely Tayman's allegation that his sentence was fundamentally wrong because less than one hundred kilograms of marijuana was reasonably foreseeable to him. If true, Tayman is enti-

tled under § 2255 to resentencing.[58] Accordingly, it is unnecessary to consider Tayman's additional argument that his counsel rendered ineffective assistance in violation of his Sixth Amendment rights by not objecting to the sentence imposed on him.

An appropriate order shall issue.

---

**56.** Assuming Wisenbaker handled ten pounds per week for four months, the approximate duration of Tayman's service to the conspiracy, the total amount distributed through him would have been approximately one hundred kilograms.

**57.** This range is based on a base offense level of 24, appropriate for an offense involving 80 to 100 kilograms of marijuana, a two-level reduction for acceptance of responsibility, and a crimi-

nal history in category I. *See* U.S.S.G. §§ 2D1.1, 5A.

**58.** Resentencing, if necessary, must be governed by the Sentencing Guidelines in effect on the date of resentencing, unless this would result in a harsher sentence and *ex post facto* violation. *See* U.S.S.G. § 1B1.11; *Smith v. United States,* 871 F.Supp. 251, 256 (E.D.Va.1994).