UNITED STATES of America

v.

Leonard M. PAYNE.

Civ. A. No. 90–10229–WGY.

United States District Court,
D. Massachusetts.

July 20, 1995.

See also 966 F.2d 4.

---

Owen S. Walker, Federal Defender Office, Boston, MA, for Leonard M. Payne.

Despena F. Billings, U.S. Atty's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

 "Three strikes and you're out" is the popular phrase, universally understood here in America.[1] Despite the popular catchwords, however, as politics is not beanbag[2] so law is not baseball. A hallmark of the law is its capacity for further, reflective proceedings. To exhaust the metaphor, this case presents the intriguing question, "What happens if, long after the game is over, one of the strikes is ultimately ruled to have been a ball?" This issue—a common one in this district, see the comprehensive opinion decided today by Judge Keeton, *Pettiford v. United States*, 94–12626–REK, 1995 WL 464920 (July 20, 1995), reveals four other curiosities *viz.*, Congress appears not to have considered the matter; the Department of Justice has left United States Attorneys without guidance though the problem appears to be a national one; our United States Attorney has embraced the narrowest possible construction to the apparent surprise of his staff; and, perhaps most curious, Massachusetts criminal convictions appear remarkably vulnerable to direct attack so that the problem is particularly acute in this district. Each of these important issues figures in the discussion below.

## I. BACKGROUND

Leonard Payne ("Payne") was convicted on May 1, 1991 of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[3] Given Payne's then-existing criminal history, the government moved that the Court sentence Payne under the Armed Career Criminal Act ("ACCA"), which states in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person ... and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C.A. § 924(e) (West Supp.1993). Payne contested the applicability of the ACCA, arguing that neither of two previous convictions for attempted breaking and entering constituted a "violent felony" necessary to draw him under the coverage of the ACCA.[4] The Court agreed with Payne and refused to sentence him to the mandatory minimum fifteen years, instead sentencing him to ten years as a career offender under the then-governing Sentencing Guidelines.[5]

---

1. The Court recognizes that the present case involves not the recent "three strikes and you're out" legislation, Pub.L. No. 103–322, 108 Stat. 1982 (codified at 18 U.S.C.A. § 3559), but rather the Armed Career Criminal Act, 18 U.S.C. § 924(e), a statute with different operative language but similar in practical effect. Thus, while the similarities justify the use of the metaphor, this opinion expresses no view on the operation or effect of the former statute.

2. Mr. Dooley, "Politics ain't beanbag." FINLEY PETER DUNNE, *MR. DOOLEY IN PEACE AND WAR* (1898) (quoted in WILLIAM SAFIRE, *POLITICAL DICTIONARY* 45 [1978]).

3. The statute provides:

 It shall be unlawful for any person who has been convicted in any court of, (sic) a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition.
 18 U.S.C.A. § 922(g)(1) (West Supp.1993).

4. Payne conceded that he had two other convictions for violent felonies. He would not be subject to the ACCA, therefore, if the attempted breakings and enterings were not "violent" felonies. Since the two attempts occurred on the same day, no one argues they were "committed on occasions different from one another" and thus there are here three, not four, potential convictions to count against Payne.

5. Under those Guidelines, a defendant was a career offender if the instant offense of conviction was a felony and either a crime of violence or a controlled substance offense, and if the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1 (1992); 18 U.S.C.A. § 924(a)(2) (West Supp.1993) ("Whoever knowingly violates [section 922(g)] shall be ... imprisoned not more than 10 years"). The Court's determination that Payne was a career offender was based on his prior convictions for armed robbery and larceny from the person, and

The Government appealed, arguing that the two attempt crimes were violent felonies. The First Circuit agreed, vacating the sentence and remanding the case for resentencing under the ACCA. *See United States v. Payne,* 966 F.2d 4, 9 (1st Cir.1992). During the pendency of the appeal, Payne filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging denial of right to counsel, ineffective assistance of counsel, and that the Court had erred in sentencing him as a career offender.

In September of 1992, pursuant to the mandate of the Court of Appeals, the Court sentenced Payne to fifteen years under the ACCA. The Court did not enter judgment at that time, but rather appointed an attorney to represent Payne on his pending habeas petition and any other challenges to the sentence. In early 1993, the Court denied his habeas petition on the merits. At a hearing on November 15, 1993, the Court entered judgment on the fifteen-year sentence.[6] At that hearing, Payne, through counsel, had alerted the Court that he believed one or more of his prior convictions were constitutionally infirm. Rather than collaterally challenge the validity of the state convictions during the federal sentencing

proceeding which, at the time, was open to Payne, see *United States v. Paleo,* 967 F.2d 7, 11 (1st Cir.1992); *United States v. Desmarais,* 967 F.2d 17, 20 (1st Cir.1992), he went instead to state court to attack the convictions at their source with the hope of returning to this Court if successful.

To that end, Payne moved for a new trial on his larceny conviction in West Roxbury District Court. Payne claimed that the presiding justice had engaged in an inadequate colloquy in violation of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), at the time Payne pleaded guilty to that offense. On May 24, 1994, the state court allowed the motion and vacated Payne's larceny conviction. The Commonwealth chose not to retry Payne, and dismissed the case.[7]

Having successfully knocked out one of his predicate convictions, Payne filed a motion in this Court for resentencing on May 27, 1994.[8]

## II. *DISCUSSION*

### A. *Custis v. United States*

Analysis must begin with *Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). That case addressed the

---

required an analysis distinct from the question of the applicability of the ACCA.

**6.** Payne appealed his sentence, but later withdrew the appeal.

**7.** The surprising infirmity of convictions initially reached in the courts of the Commonwealth warrants some comment, as they are increasingly coming under intense scrutiny in the last ditch attempt to avoid the imposition of the ACCA's federal fifteen year mandatory minimum sentence. The most common flaws appear to be:
 1. The failure adequately to advise a defendant of his rights as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *Commonwealth v. Duquette,* 386 Mass. 834, 844, 438 N.E.2d 334 (1982), *Commonwealth v. Mele,* 20 Mass.App.Ct. 958, 959, 480 N.E.2d 647 (1985) upon pleading guilty during the first-tier proceeding of the Commonwealth's complicated two-tier District Court criminal trial process. *See Domegan v. United States,* 703 F.Supp. 166, 169 (D.Mass.1989) (Mazzone, J.); *United States v. Smith,* Cr. No. 95–10031–WGY (sentencing hearing June 28, 1995, Tr. at 8–11) (government's plan to secure felon-in-possession conviction, apply ACCA, and seek a life sentence due to commission of two

unrelated murders unravels when predicate state convictions vacated in Municipal Court of the City of Boston). The recent statutory abolition of trial de novo in the Massachusetts District Courts, Mass.Gen.L. ch. 278, § 18 (West Supp. 1995), may alleviate this problem.
 2. The use of tape recorders to keep the "record" in many of the sessions of the courts of the Commonwealth. Use of such an antiquated system poses substantial risks that the convictions obtained may ultimately be set aside due to the inadequacy of the trial record. *See United States v. Tavares,* Cr. No. 91–10278–WGY (Defendant's Sentencing Memorandum), *Commonwealth v. Tavares,* No. JC–8725–188 (Mass.Super.Ct. March 24, 1995) (margin endorsement by Justice Gerald O'Neill setting aside the state conviction). *See generally United States v. One Ford 198X Mustang, Vehicle Identification No. 1FAB42E5JF290177,* 749 F.Supp. 324, 326 n. 1 (D.Mass.1990) (collecting cases noting problems with tape recording Massachusetts court sessions). Sadly, this problem will get worse due to inadequate funding of the Massachusetts court system.

**8.** The motion was later converted to a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

issue of whether a defendant in a federal sentencing proceeding subject to the ACCA may collaterally attack the validity of his previous state court convictions. The Supreme Court held that sentencing was not a proper occasion—with one exception not here relevant—for a federal court to examine the propriety of a defendant's prior state convictions. *See id.* at ——, 114 S.Ct. at 1734. The Court held that collateral attacks were not authorized by section 924(e), noting that "[t]he statute focuses on the *fact of the conviction* and nothing suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it may be counted." *Id.* at ——, 114 S.Ct. at 1736 (emphasis supplied). The provision of the statute prohibiting a court from counting a conviction which has been expunged or set aside or for which the defendant has been pardoned "creates a clear negative implication that courts may count a conviction that has not been set aside." *Id.* The Court's conclusion also furthered the goals of ease of judicial administration and the finality of judgments. *Id.* at —— —— ——, 114 S.Ct. at 1738–39.

Most importantly for present purposes, Chief Justice Rehnquist, writing for the Court, concluded his opinion with the following dictum:

> We recognize ... that Custis ... may attack his state sentences in Maryland or through federal habeas review. If Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences. We express no opinion on the appropriate disposition of such an application.

*Id.* at ——, 114 S.Ct. at 1739. In dissent, Justice Souter noted:

> The Court acknowledges that an individual still in custody for a state conviction relied upon for enhancement may attack that conviction through state or federal habeas review and, if successful, "may ... apply for reopening any federal sentence enhanced by the state sentence." And *the Court does not disturb uniform appellate case law holding that an individual serving an enhanced sentence may invoke federal habeas to reduce the sentence to the extent it was lengthened by a prior unconstitutional conviction.*

*Id.* at ——, 114 S.Ct. at 1746 (Souter, J., dissenting) (citing JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE §§ 8.2, 8.4, at 62–64 & n. 13.2, 89 n. 27 [Michie Supp.1993] ) (emphasis supplied).

Only one post-*Custis* reported decision has addressed the situation currently before the Court. *See United States v. Nichols,* 30 F.3d 35 (5th Cir.1994). In *Nichols,* the defendant was sentenced as a career felon under section 4B1.1 of the Sentencing Guidelines based on his two prior state drug convictions. One of those convictions was vacated by a state appellate court, and the defendant filed a petition under section 2255 to reopen his sentence. In that case the government conceded at oral argument that *Custis* entitled Nichols to the benefit of the invalidation, and the court thus remanded the case to the district court for resentencing. *Id.* at 36. In the case at bar the government makes no such concession and argues, therefore, that *Nichols* does not apply. *Nichols* is nonetheless strong evidence of the precarious nature of the Government's present posture.[9] In-

---

**9.** At the Court's request, the Assistant United States Attorney then responsible for this case inquired of the Justice Department and was told that it had no policy concerning this issue and that the United States Attorneys were free to pursue such policy as each one deemed in the public interest.

As will be seen from the discussion that follows, in Massachusetts the United States Attorney appears to have adopted a "scorched earth" policy of resistance at any ethical cost to the claims of petitioners seeking resentencing on the ground that convictions used for sentencing enhancement have fallen by the wayside. This is

all the more remarkable since his Assistants—so far as this Court is able to determine—had, until the argument of this matter, uniformly taken the contrary position. *See United States v. Talkowski,* Cr. No. 90–10280–WGY (filed Nov. 13, 1990) (AUSA Feeley says that state court reversal of sentencing enhancing conviction warrants federal resentencing); *United States v. Tavares,* Cr. No. 91–10278–WGY (filed Oct. 8, 1991) (AUSA Pelgro to same effect).

Payne's attorney argues, with some force, that if he had known at the time of sentencing that the government would contest his ability to revisit the sentence in this Court after going to the

deed, in dicta one district court in this circuit has already rejected the position urged by the government here. *United States v. Acosta*, 861 F.Supp. 1, 3 (D.R.I.1994) (Pettine, J.) (if state courts determine prior convictions to be unconstitutional, defendant may petition for review of enhanced sentence).

Moreover, federal courts around the country, in applying the holding of *Custis* to deny collateral review of state convictions in sentencing proceedings under the ACCA (and other sentence enhancement statutes), have noted and relied upon the availability of subsequent sentence review upon invalidation of a predicate conviction.[10] The case law makes clear that *Custis* deals with the timing, but not the ultimate availability, of collateral attack on sentence-enhancing predicate convictions. *See Nichols v. United States,* —— U.S. ——, ——, 114 S.Ct. 1921, 1937, 128 L.Ed.2d 745 (1994) (Ginsburg, J., dissenting) (arguing

that *Custis* presented a "forum question" of "where, not whether, the defendant could attack a prior conviction for constitutional infirmity"); *Brock v. Weston*, 31 F.3d 887, 890 (9th Cir.1994) (*Custis* holding that sentencing courts not constitutionally obligated to examine validity of predicate convictions "clearly premised on the fact that collateral attacks based on other defects may be heard on habeas review").[11]

The Appeals Court of Massachusetts, in reviewing the denial of a motion for a new trial on an old conviction brought by a defendant sentenced in federal court under the ACCA, presumed that invalidation of the state conviction would entitle the prisoner to resentencing. *Commonwealth v. Russell*, 37 Mass.App.Ct. 152, 153 n. 2, 638 N.E.2d 37, *rev. denied*, 418 Mass. 1109, 641 N.E.2d 1352 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 759, 130 L.Ed.2d 657 (1995). Other state

state courts, he would have requested a continuance until the propriety of the prior convictions had been determined by the state courts. This Court could well have granted such a request. The inability of the Office of the United States Attorney to speak with one voice on the availability of relief from an enhanced sentence following invalidation of a predicate conviction, while not improper per se, is nonetheless inimical to the fair, predictable and evenhanded administration of justice. Institutional litigants like the government should understand that in courtrooms where the official court reporter creates a retrievable database covering all court proceedings, such a resource is an invaluable aid to the Court, litigants, and the public alike to insure that such major litigants speak with one voice and refrain from bending positions to suit the audience. Networking such retrievable electronic databases will further enhance the quality of justice.

**10.** *See United States v. Frazee*, No. 94–8091, 1995 WL 324493, at *1 (10th Cir. May 31, 1995) (defendant sentenced under ACCA may challenge predicate conviction through habeas after exhaustion of state remedies); *Hankins v. United States*, 54 F.3d 779, No. 93–3750, 1995 WL 302409, at *1 (7th Cir.1995) (under *Custis*, defendant may return to federal court and file a motion under § 2255 to correct federal sentence on ground he is no longer a career offender under sentencing guidelines); *United States v. Rogers*, 45 F.3d 1141, 1143 (7th Cir.1995) (defendant may challenge juvenile convictions used to enhance federal sentence in state court or on federal habeas); *United States v. Garcia*, 42 F.3d 573, 581–82 (10th Cir.1994) (noting that defendants are not without means to attack infirmities in prior convictions); *United States v. Clay*, No. 91–

5409, 1994 WL 592823, at *4 n. 3 (6th Cir. Oct. 28, 1994) (defendant may attack state convictions through federal habeas review and, if successful, may then attack enhancement of federal sentence); *United States v. Fondren*, 43 F.3d 1228, 1229 (9th Cir.1994) (habeas, not appeal of sentence, is proper time to challenge prior convictions); *United States v. Gay*, 28 F.3d 113, No. 93–5271, 1994 WL 325402, at *2 (10th Cir. July 11, 1994) (defendant sentenced as career offender may attack prior convictions in state court or federal habeas action and then apply for reopening of enhanced federal sentence); *United States v. Allen*, 24 F.3d 1180, 1187 (10th Cir.1994) (defendant retains right to challenge enhancement should courts considering collateral challenges invalidate prior convictions); *United States v. Self*, 876 F.Supp. 244, 247 (D.Colo. 1995) (same); *cf. Clawson v. United States*, 52 F.3d 806, 808 (9th Cir.1995) (state conviction pending on direct appeal may be used to enhance federal sentence, but if appeal succeeds, defendant should then petition federal court to reopen enhanced sentence).

**11.** While the efficiency of this multi-step procedure has been questioned, see *Custis*, —— U.S. at ——, 114 S.Ct. at 1747 (Souter, J., dissenting) ("it strikes me as entirely sensible to resolve any challenges to the lawfulness of a predicate conviction in the single sentencing proceeding"); *Garcia*, 42 F.3d at 581 n. 9, it is nonetheless mandated by the regime under which this Court operates. *See Fondren*, 43 F.3d at 1229 (*Custis* compels rejection of argument that judicial economy would be advanced by determination of validity of prior convictions at time of sentencing).

courts have operated under the same presumption. *See, e.g., McGuire v. Commonwealth,* 885 S.W.2d 931, 937 n. 1 (Ky.1994).

Finally, the result Payne seeks is consistent with pre-*Custis* law on the subject. *See Johnson v. Mississippi,* 486 U.S. 578, 586, 108 S.Ct. 1981, 1986–87, 100 L.Ed.2d 575 (1988) (citing *Phillips v. State,* 421 So.2d 476 [Miss.1982] ) (reversal of predicate offense requires resentencing); *United States v. Guzman–Colores,* 959 F.2d 132, 136 (9th Cir. 1992) (Tang, J., concurring) (federal prisoner may challenge enhanced sentence by section 2255 motion if predicate conviction subsequently reversed or vacated in collateral proceeding); *Bonfiglio v. Hodden,* 770 F.2d 301, 306 (2d Cir.1985) (defendant has right to reassessment of sentence if trial court relied on prior invalid conviction); *United States v. Davis,* 753 F.Supp. 529, 532 (D.Vt.1990) (Billings, C.J.) (due process requires that reversal of state convictions relied upon in imposing enhanced sentence under ACCA entitles defendant to resentencing).

In this district, the principles first expressed by Judge Mazzone [12] in *Domegan v. United States,* 703 F.Supp. 166, 169 (D.Mass. 1989) continue to apply here. Domegan, like Payne, was convicted of unlawful possession of a firearm and sentenced to fifteen years under the ACCA. He moved to withdraw his earlier state-court guilty pleas and for new trials on the grounds that his guilty pleas were the product of deficient colloquies at the hearings—the same grounds upon which Payne's West Roxbury District Court conviction was vacated. The motions in the Com-

monwealth district court were allowed, and Domegan petitioned the federal district court under section 2255 to vacate his sentence. Even though the state intended to retry Domegan on the predicate offenses, the court held that his enhanced federal sentence must be reexamined:

> Once it is determined that petitioner was convicted and sentenced under an enhanced sentencing provision, the question arises whether the subsequent vacation of some of the underlying convictions calls for that sentence to be set aside. When the underlying convictions are constitutionally invalid, it is improper to let the enhanced sentence stand. Under those circumstances, the enhanced sentence *only serves to continue the constitutional wrong.*

*Id.* (citing *Baldasar v. Illinois,* 446 U.S. 222, 228, 100 S.Ct. 1585, 1588, 64 L.Ed.2d 169 [1980] [Stewart, J. concurring] and *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 [1967] ) (emphasis supplied). Payne's enhanced sentence likewise rests on an improperly obtained conviction, and thus may not stand.[13]

### B. *Teague v. Lane*

This Court considers the instant case to be governed by the dictum in *Custis v. United States.* The government's analysis starts off on an entirely different tack. The government's central contention is that regardless of the merits of Payne's petition, he is barred from obtaining relief by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and its progeny.[14] *See*

---

**12.** Judge Mazzone is presently a Vice Chairman of the United States Sentencing Commission.

**13.** Although not essential to the Court's decision, the fact that the Commonwealth has dismissed the larceny charge against Payne makes his case for resentencing even stronger than Domegan's. The state, as noted, planned to retry Domegan, and the predicate conviction might have been reinstated. However, such reinstatement is impossible. The general rule is thus that if at any time during a federal prisoner's confinement pursuant to the ACCA one or more of the necessary predicate convictions is invalidated for whatever reason, the prisoner is entitled to reexamination of the sentence. If the defendant is subsequently convicted a second time of the predicate offense, he nonetheless remains outside the scope of the ACCA's coverage because at the

time of sentencing he did not have three constitutionally-obtained convictions to his discredit. *See United States v. Smith,* Cr. No. 95–10031–WGY (sentencing hearing June 28, 1995, Tr. at 10).

**14.** The government incorrectly asserts that this Court "lacks jurisdiction" to entertain Payne's motion. The Supreme Court has made it clear that the *Teague* retroactivity rule is not jurisdictional in nature, and may be waived if not timely raised by the government. *See Godinez v. Moran,* — U.S. ——, ——, n. 8, 113 S.Ct. 2680, 2685 n. 8, 125 L.Ed.2d 321 (1993) (declining to dispose of case on *Teague* grounds because state failed to raise issue in lower courts or in its petition for certiorari); *Parke v. Raley,* — U.S. ——, ——, 113 S.Ct. 517, 521, 121 L.Ed.2d 391 (1992)

*Goeke v. Branch,* — U.S. —, — - —, 115 S.Ct. 1275, 1277–78, 131 L.Ed.2d 152 (1995) (per curiam); *Caspari v. Bohlen,* — U.S. —, —, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *Graham v. Collins,* — U.S. —, — - —, 113 S.Ct. 892, 897–98, 122 L.Ed.2d 260 (1993); *Wright v. West,* 505 U.S. 277, 289–93, 112 S.Ct. 2482, 2489–91, 120 L.Ed.2d 225 (1992); *Stringer v. Black,* 503 U.S. 222, 227, 112 S.Ct. 1130, 1134–35, 117 L.Ed.2d 367 (1992); *Sawyer v. Smith,* 497 U.S. 227, 233, 110 S.Ct. 2822, 2826–27, 111 L.Ed.2d 193 (1990); *Saffle v. Parks,* 494 U.S. 484, 487–94, 110 S.Ct. 1257, 1259–63, 108 L.Ed.2d 415 (1990); *Butler v. McKellar,* 494 U.S. 407, 412–16, 110 S.Ct. 1212, 1216–18, 108 L.Ed.2d 347 (1990); *Penry v. Lynaugh,* 492 U.S. 302, 328–30, 109 S.Ct. 2934, 2951–53, 106 L.Ed.2d 256 (1989). Under *Teague,* a petitioner may not obtain habeas relief, regardless of the merits of his claim, if such relief would require recognition of a "new rule," unless the new rule would then have retroactive application. 489 U.S. at 299–310, 109 S.Ct. at 1069–1075. Such a rule will only be retroactive if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or if it constitutes a "watershed rule" altering "our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." *Id.* at 311, 109 S.Ct. at 1075–76. The government argues that Payne here seeks an allegedly "new" rule—that a sentence lawfully imposed under the ACCA may be revisited upon invalidation of a predicate conviction. Since such a rule would not warrant retroactive application under either *Teague* exception, so the argument goes, Payne may not press his claim here.

This broad reading of *Teague* is fraught with difficulty; indeed, it is fatally flawed in at least four facets.

First, if the Government is correct and *Teague* does apply, all prisoners in Payne's shoes will be procedurally barred from having this question decided on the merits. The issue will simply be beyond the reach of habeas corpus review. This is not, and cannot be, the meaning of *Teague.* *Teague* and subsequent cases do not preclude review entirely; rather, they determine *when* review may be had, and *by whom.* The "nature and function" of the writ of habeas corpus is as a collateral remedy "not designed as a substitute for direct review." *Wright,* 505 U.S. at —, 112 S.Ct. at 2490; *Teague,* 489 U.S. at 306, 109 S.Ct. at 1073. That is precisely the function the habeas proceeding here serves because there is no direct review for which it may be said to substitute.

Second, at bottom Payne does not here seek application of a new rule of constitutional criminal procedure at all. *See Goeke,* — U.S. at —, 115 S.Ct. at 1277 (question is whether rule was "required by the Constitution"); *Caspari,* — U.S. at —, 114 S.Ct. at 957 (announcement and application of a "new rule of *constitutional* law" may not occur on habeas review); *Graham,* — U.S. at —, 113 S.Ct. at 897 (Court must determine whether granting habeas relief "would create a 'new rule' of *constitutional* law"); *Sawyer,* 497 U.S. at 232, 110 S.Ct. at 2826 (applying *Teague* where habeas petition presented a "host of constitutional claims"); *Teague,* 489 U.S. at 299, 310, 109 S.Ct. at 1068–69, 1075 ("new *constitutional* rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced").

Putting aside the undecided question of whether *Teague* applies to rights derived from statutes,[15] the ruling Payne seeks,

(*Teague* rule not jurisdictional); *Collins v. Youngblood,* 497 U.S. 37, 40–41, 110 S.Ct. 2715, 2718–2719, 111 L.Ed.2d 30 (1990) (same). Thus, *Teague* constitutes an affirmative defense, like any other, subject to waiver by the government, and may not be invoked *sua sponte* by the Court to dismiss a petition.

**15.** Some lower courts have engaged in a *Teague* analysis when confronted with the retroactivity

of newly announced rules of statutory criminal procedure. Most of those cases concerned the retroactivity of the rule announced in *Gomez v. United States,* 490 U.S. 858, 872, 109 S.Ct. 2237, 2246, 104 L.Ed.2d 923 (1989) that federal magistrates are not authorized by statute to conduct jury selection. *See Grassi v. United States,* 742 F.Supp. 1141, 1142 (S.D.Fla.1990), *aff'd on other grounds,* 937 F.2d 578 (11th Cir.1991) (*Gomez*

whether founded on the ACCA or the Due Process Clause of the Constitution, is in no sense new. The Supreme Court has acknowledged the difficulty of precisely defining "new rule," see *Saffle,* 494 U.S. at 488, 110 S.Ct. at 1260, and has employed various formulations of what is meant by "new": any rule not "dictated by precedent," *Goeke,* —— U.S. at ——, 115 S.Ct. at 1277; *Caspari,* —— U.S. at ——, 114 S.Ct. at 953; *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070; any rule not "compelled by existing precedent," *Saffle,* 494 U.S. at 484, 488, 110 S.Ct. at 1257, 1260; any rule subject to debate among "reasonable minds," *Butler,* 494 U.S. at 415, 110 S.Ct. at 1217–18; or any rule that "breaks new ground" or "imposes a new obligation on the States or the Federal Government," *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070. The Supreme Court has also framed the issue as whether a "reasonable jurist" reviewing the law at the time a conviction or sentence became final would consider the proposed rule dictated by precedent. *Caspari,* —— U.S. at ——, 114 S.Ct. at 955.

As Justice Souter noted in *Custis, Teague* left untouched *"uniform appellate case law"* that an enhanced sentence must be reduced to the extent it was based on an unconstitutional conviction. *Custis,* —— U.S. at ——, 114 S.Ct. at 1746 (Souter, J., dissenting) (emphasis supplied). The rule applied by this Court has been the law in this district at least since *Domegan.* The failure of the Government to bring to the Court's attention a single case in which an enhanced sentence

withstood attack following invalidation of a necessary predicate conviction further bolsters the conclusion that a reasonable jurist faced with the question raised by Payne's petition would be compelled to grant the relief sought. Payne seeks nothing more than the application of established "uniform appellate" law, and to that he is certainly entitled.

■ Third, this Court rules that *Teague* does not apply to habeas petitions brought by *federal* prisoners seeking review of enhanced sentences pursuant to section 2255. *Teague* and all subsequent Supreme Court cases interpreting *Teague* involved state prisoners seeking habeas relief under section 2254. The Second Circuit, extending *Teague* to federal prisoners, explained:

> [T]here is no indication that the [*Teague*] Court intended its analysis to be limited to state convictions. Its discussion of the history of the doctrine avoided drawing any distinction between state and federal convictions for purposes of retroactivity.... Moreover, although collateral review of federal convictions does not involve the considerations of federalism and comity that must be weighed on a state habeas corpus application, the primary reason for restricting collateral review—the goal of finality—is common to both federal and state applications.

*Gilberti v. United States,* 917 F.2d 92, 94–95 (2d Cir.1990). *But see Teague v. Lane,* 489 U.S. 288, 327 n. 1, 109 S.Ct. 1060, 1070 n. 1,

rule does not apply retroactively in collateral proceeding under § 2255); *Hrubec v. United States,* 734 F.Supp. 60, 66 (E.D.N.Y.1990) (same); *Gilberti v. United States,* 731 F.Supp. 576, 579 (E.D.N.Y.), *aff'd,* 917 F.2d 92 (2d Cir. 1990) (same); *United States v. Rubio,* 722 F.Supp. 77, 86 (D.Del.1989), *aff'd,* 908 F.2d 965 (3d Cir.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990) (same). *But see United States v. Baron,* 721 F.Supp. 259, 262 (D.Haw.1989) (*Gomez* rule implicates fundamental fairness of the trial and accuracy of the conviction and must be applied retroactively on collateral review). Only the *Hrubec* court explicitly acknowledged the statutory-constitutional distinction, holding that the dictate of *Teague* applies to habeas proceedings where "the petitioner urges retroactive application of new, already-announced, non-constitutional rules of criminal procedure such as *Gomez.*" 734 F.Supp. at 65.

The First Circuit appears to agree with the majority of courts that have found *Teague* to apply to rights derived from statutes, albeit in dicta. In holding that *Gomez* applies to cases pending on direct appeal at the time that case was decided, the court stated:

> For cases arising on collateral review after convictions have become final, a different set of considerations is implicated. In such cases, new rulings—*even those of a constitutional dimension*—are not applicable, unless the neoteric rules affect primary, private individual conduct, or are so central to an accurate determination of innocence or guilt as to constitute a "bedrock procedural element."

*United States v. Lopez–Pena,* 912 F.2d 1542, 1545 n. 3 (1st Cir.1989), *cert. denied,* 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991) (citing *Teague*).

103 L.Ed.2d 334 (1989) (Brennan, J., dissenting) (noting that plurality did not address question of whether *Teague* applies to federal claims brought under section 2255); *see also Stringer*, 503 U.S. at 228, 112 S.Ct. at 1135 (interests underlying "new rule" jurisprudence are "finality, predictability, *and comity*") (emphasis supplied).

To this Court, the difference in the nature of proceedings under sections 2254 and 2255 precludes application of *Teague* to federal prisoners, at least in the present circumstances:

> [I]n contrast to the "civil" and "collateral" section 2254 remedy for state prisoners, the section 2255 remedy for federal prisoners bears the markings of an integral part of a continuous criminal proceeding that is segmented by no event or condition decisive of finality. This characteristic of section 2255 proceedings creates the possibility, ignored by most courts and commentators that have faced the issue, that *Teague* does not apply in section 2255 proceedings
> . . .

JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 22A.6, at 272–74 (Michie Supp.1993). The legislative history of section 2255 supports the view that 2255 actions are part of the criminal proceedings and that the conviction or sentence is not "final" until disposition of the habeas petition. *See id.* § 22A.6, at 273 n. 15; *see also* RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS 1 advisory committee note (1976 Adoption) (2255 motion "is a further step in the movant's criminal case and not a separate civil action").

Fourth, and most important for present purposes, there is the inescapable fact of *Custis* itself. Even if the government were to overcome all of the above hurdles, any possibility that *Teague* might apply is precluded by the final paragraph of *Custis*. It would be an illogical, if not cruel, gesture for the Supreme Court to invite prisoners to attack their predicate convictions, —— U.S. at ——, 114 S.Ct. at 1739, and then inform them that their efforts must go for naught and their enhanced sentences must stand. No court has read *Custis* to encourage such

empty, formal displays of futility, see note 10, *supra*, nor will this one.

### C. Abuse of the Writ

The government's contention that Payne has abused the writ under *McCleskey v. Zant*, 499 U.S. 467, 494–95, 111 S.Ct. 1454, 1470–71, 113 L.Ed.2d 517 (1991), and is therefore not entitled to a determination on the merits, requires little discussion. While it is true that this is Payne's second habeas petition, he could not have advanced the argument he now makes in that first proceeding—his state conviction had not yet been overturned. In a perfect world, Payne would have waited until all attempts to invalidate his state convictions were exhausted before filing his first habeas petition, but his failure to do so does not, in this instance, constitute an abuse of the writ. As required by *McCleskey*, Payne has shown both cause for his failure to raise the instant issue previously and prejudice therefrom.

### D. The Merits

The government's fallback position, in the event that its *Teague* and *McCleskey* arguments prove unavailing, is that the plain language and legislative history of the ACCA require the court to impose an unalterably enhanced sentence upon proof at the time of sentencing of the requisite three prior convictions. In other words, the government argues that the commission of a federal crime with knowledge of three previous presumptively valid convictions, no matter how obtained, dooms the defendant to the ACCA's mandatory minimum provision.

The short answer is that, whatever the legislative history, this is not what the ACCA plainly says. The statute does not seek to punish those who commit crimes with knowledge that on three previous occasions, a judgment of guilty has entered against them. Rather, the ACCA seeks to punish those who, in fact, are properly found to have committed multiple crimes and thus represent an increased threat to society and its citizens. *See* 18 U.S.C.A. § 921(a)(20) (West Supp.1993) ("Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction"); H.R. REP. No. 98–1073, 98th Cong., 2d

544

Sess. 3 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin.News 3661, 3662 (ACCA seeks to enhance penalties for the "particular segment of the career criminal population" which is especially dangerous and disproportionately responsible for crime). It cannot be gainsaid that in the eyes of the law, a defendant whose conviction is overturned, even on purely technical grounds irrespective of actual guilt, must be considered innocent of the crime. While it is true that the ACCA does not modify the term "conviction" so as to limit its coverage to convictions not subject to collateral attack, the requirement that any sentence-enhancing convictions be constitutionally obtained is implicit in the word itself. A contrary holding would raise serious due process concerns and run afoul of the widely-recognized *Domegan* principle that continued enhancement following invalidation merely "continue[s] the Constitutional wrong." 703 F.Supp. at 169.[16]

### III. *CONCLUSION*

As the government concedes that Payne no longer has the three valid predicate convictions required to invoke the fifteen-year mandatory minimum of the ACCA, Payne is entitled to be resentenced. While Payne's timing may not be ideal—he could have fought to wipe out his state convictions before deciding to possess a firearm in violation of federal law, or at least done so prior to his sentencing in this Court—that does not detract from the fact that he is currently serving an extra five years in prison for an unconstitutional conviction. His sentence is therefore vacated, and a date for resentencing will be set by the Court. As was the situation when first he was sentenced, Payne is on notice that he faces an upward departure under the Sentencing Guidelines in that they may not adequately reflect the criminality of his conduct. *See* U.S.S.G. § 5K2.0 (1994).

---

**16.** The Government points out that the legislative history of the ACCA refers repeatedly to "three-time losers," subjecting them to the mandatory fifteen-year sentence, with "no caveat for three-time losers whose convictions are subsequently overturned." They miss an essential point: invalidation of a conviction for constitutional error immediately transforms the person into a two-time loser.